Robert L. BRUNELLE

v.

TOWN OF SOUTH KINGSTOWN et al.

No. 95–489–Appeal.

Supreme Court of Rhode Island.

July 31, 1997.

Robert Karmen, Providence, for Plaintiff.

Anthony F. DeMarco, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG and BOURCIER, JJ.

## OPINION

BOURCIER, Justice.

This case comes before us on cross appeals from a final judgment of the Superior Court entered in favor of the plaintiff, Robert L. Brunelle (Brunelle), and against the defendants, the town of South Kingstown, its town council members, its town treasurer, and its building and zoning officer. The final judgment awarded Brunelle compensatory damages as well as attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for the temporary taking of his land because of the defendant town building inspector's denial of his request for a building permit in December, 1985 and the defendant town council's later denial of his application for a change of zone on October 11, 1988 on his parcel of land upon which he had intended to construct some 300 mini-storage or self-storage units along with an office building. The trial justice found the defendant town council's action to have been "arbitrary and capricious," and that Brunelle was entitled to temporary "taking" damages from October 11, 1988 to January 30, 1990, as well as attorney's fees.

The town and its municipal defendants in their appeal contend that no taking resulted from the original 1976 rezoning of the plaintiff's land or from the building inspector's denial of his request for a building permit or from the town council's later denial in 1988 of his request for a change of zone on the land. The defendants accordingly assert that the trial justice erred in awarding damages and attorney's fees to plaintiff.

Brunelle, in his appeal, contends that the trial justice, though correct in finding a taking, erred by utilizing an improper method for computation of his "taking" damage award and that in awarding attorney's fees, she failed not only to compute those fees on the basis of his attorney's current billing rate but also to include thereon the addition of prejudgment interest.

For the reasons hereinafter set out, we reverse the judgment entered below and remand this case to the Superior Court with directions to dismiss plaintiff's action.

## I
## Case Facts and Travel

This appeal springs from a townwide land-zoning revision undertaken by the town of South Kingstown in 1976, pursuant to special enabling legislation enacted by the General Assembly. *See* P.L.1973, ch.101.

In the course of that rezoning, a particular three-and-a-half acre parcel, a part of a larger tract of land owned by the Penn–Central Corporation (Penn–Central) and forming part of its overall West Kingstown railroad station and yard, was inadvertently depicted on the town zoning map accompanying the zoning revision ordinance as having been rezoned from M–1 Manufacturing use to R–20 Residential use. Penn–Central at no time, however, questioned or challenged the discrepancy between the lot's zoning map depiction and the town council's zoning ordinance.

Some nine years later, plaintiff, Brunelle, an experienced builder and part owner of DeFelice Construction as well as a licensed real estate broker and former member of the zoning board of review in the neighboring town of Richmond, was interested in purchasing land in the vicinity of the University of Rhode Island upon which to construct and operate a so-called mini-storage or self-storage business as well as a professional office building. Brunelle, being friendly with Anna Prager (Prager), the South Kingstown town planner, inquired of her about available land in South Kingstown that would permit his intended construction projects and business. Prager told him that she was uncertain whether mini-storage units were a permitted use under the town zoning ordinance but that his best opportunity to find any land zoned for manufacturing or business use in South Kingstown would be in the area of the West Kingstown railroad station. Accordingly that advice from Prager led Brunelle to Penn–Central. He shortly thereafter entered into negotiations with Penn–Central to purchase a portion of its land holdings. Brunelle's interest centered on a three-and-a-half acre portion of Penn–Central's land that was shown on the town's zoning map as zoned R–20 Residential, but which he had been told by Prager, and which he had himself determined was actually zoned M–1 Manufacturing. He concluded that the lot's zone depiction on the town's zoning map was erroneous. As a result Brunelle negotiated a very reasonable $18,000 purchase price that his counsel concedes "reflected Penn–Central's desire to sell the land as fast as possible and the fact that also that the property was listed as zoned residential on the town's official zoning map."

Brunelle, because of his experience in zoning matters, was aware that the three-and-a-half acre parcel that he and Penn–Central had carved out of Penn–Central's larger land holdings would for zoning purposes constitute a substandard lot because it lacked sufficient lot street frontage on a public roadway. He attempted, without success, to condition his purchase of the lot upon Penn–Central first obtaining relief from the lot's street frontage infirmity. Later Brunelle, prior to taking title to the lot, asked Penn–Central to join with him in making application to the town zoning board of review to request relief from the lot's street frontage deficiency by way of a variance. Penn–Central also refused that request. Undaunted, Brunelle then filed his own individual application for variance relief and on the variance application form listed himself as "buyer under sales agreement," adding that he wanted to purchase the lot but that it did not have the required and necessary lot street frontage and that "the portion of Lot 15 that he wishes to purchase is serviced only by a private road, Railroad Avenue." Despite the fact that Brunelle lacked any legal standing to request the variance as a "buyer under sales agreement," *see Parise v. Zoning Board of Cranston,* 92 R.I. 338, 168 A.2d 476 (1961); *Tripp v. Zoning Board of Pawtucket,* 84 R.I. 262, 123 A.2d 144 (1956), the town zoning board nonetheless, in order to accommodate him, granted his request for a residential use street frontage variance on October 23, 1985.

Some six weeks later, on December 11, 1985, Brunelle took title to the three-and-a-half acre lot, and the matter before us was spawned. Abandoning any intention of using his lot for residential purposes as expressed in his earlier variance request, he instead engaged local counsel, Margaret A. Laurence

(Laurence), to have the town correct the alleged discrepancy between its official zoning map and the town zoning ordinance so as to show and place the lot in its true M–1 Manufacturing zone as shown on the town's comprehensive plan map. Laurence and/or Brunelle then began meeting and corresponding with various town officials, including the town solicitor, in order to determine how the lot's zoning depiction could be changed. Brunelle determined that he should file a request to amend the zoning map and ordinance and, in August 1986, did petition and request the town council to amend the zoning designation for his lot. As required by the zoning ordinance, the requested zone change was referred to the town planning board. The board in turn began to research the claimed zoning error, as did Brunelle's attorney, the town solicitor and the town planner.

On July 22, 1988, Brunelle's attorney wrote to the town solicitor informing him that she had concluded that the town zoning map's R–20 Residential zoning depiction of Brunelle's lot following the town's 1976 zoning revision was the result of a "drafting error and not the intention of the Planning Board or the town council." Laurence suggested that the zoning board of review pursuant to § 130 of the zoning ordinance might be authorized to correct the zoning error and requested that the council's hearing on Brunelle's zoning change petition be continued to await the town solicitor's advice. On July 28, 1988, the town solicitor replied to Laurence's letter and informed her that § 130 of the zoning ordinance appeared to be of little assistance in resolving the problem and that the town council remained the proper source of any zoning map correction. On September 19, 1988, Prager, the town planner, advised the town manager that her research, done at the request of Brunelle's attorney, also revealed that Penn–Central's land, prior to 1976, had been zoned "manufacturing" and that in the 1976 revision it had been partially rezoned manufacturing and part residential because of its being adjacent to both manufacturing and residential use areas. She acknowledged, however, that the portion of the lot Penn–Central and Brunelle had carved out of Penn–Central's larger tract was depicted on the 1976 zoning map as R–20 Residential, but that the town's drafting department zoning revision work maps depicted the lot as zoned both R–20 and M–1. She concluded that the lot was erroneously depicted on the official map as R–20 Residential. She noted, however, that she was uncertain about the planning board's original zoning intent.

Two days later, on September 21, 1988, Brunelle wrote to the town council regarding Prager's review of the problem and acknowledged that the lot had been rezoned R–20 Residential as the result of innocent error and, that even though it could be developed for residential use, he believed it would be more beneficial to him if developed commercially and requested that he be allowed to build and rent some 300 or more mini-storage units as well as an office building on the lot.

On September 26, 1988, the scheduled as advertised public hearing required on Brunelle's zoning amendment request was held. At that hearing, there was overwhelming public opposition presented to the proposed zone change. The many objectors pointed out the lot's frontage on a private road that was subject to periodic flooding during rain and snow storms as well as the lot's abutting in part an established residential area. The objectors and objections were so numerous that the council meeting extended past midnight and had to be adjourned. The council voted to defer action on the requested zone change until its next council meeting on October 11, 1988.

In the meantime, following the public hearing but prior to the next scheduled town council meeting, Brunelle's attorney, apparently overwhelmed by the public opposition voiced against the proposed zone change, wrote to the town council on October 7, 1988, and stated:

"Dear Honorable Town Council:

"It is my understanding that the status of ownership of Railroad Avenue, West Kingston, Rhode Island is currently being researched by members of the Town staff. I would be happy to assist in that research if I can be of service to the Town.

"Because of that outstanding issue and other issues and questions that were raised at the public hearing, including but not limited to the zoning and traffic questions, Mr. Brunelle respectively requests that he be allowed to withdraw his current application for a zone change without prejudice to him.

"We are well aware of the time that was invested in this zone change by Town employees and Town Boards and we apologize for any inconvenience that may have been caused. However, it appears that at this juncture, the most appropriate course of action would be to withdraw the petition and reanalyze the situation.

"Thank you for your consideration of this request to withdraw."

Laurence's reference in her letter to the status of ownership of Railroad Avenue related to the planning board's earlier letter to the town council that had recommended approval of Brunelle's zoning change petition. That approval had been specifically conditioned upon Brunelle's acquiring ownership of Railroad Avenue, a private right of way, and its reconstruction by Brunelle, which had not yet been undertaken by him. The town traffic commission's approval of his zoning change request was similarly conditioned.

On October 11, 1988, the town council, notwithstanding Brunelle's request to withdraw his zoning change petition, voted to deny the requested zone change after considering the lot's substandard street frontage deficiency,[1] the private right of way problem, including the periodic flooding of the right of way, and the concerns of the residents living in the area.

Apparently aware that discretionary legislative action of a city or town council in refusing to enact a requested amendment to its zoning ordinance is not one that lends itself to the Superior Court's statutory judicial review of zoning appeals pursuant to G.L.1956 § 45–24–20 nor to that court's equity jurisdiction so as to permit review of a municipal council's zoning denial decision, *see Consolidated Realty Corp. v. Town Council*

*of North Providence,* 513 A.2d 1, 4 (R.I.1986), Brunelle, on December 2, 1988, decided to file a civil action in the Superior Court, alleging therein a violation of his "constitutional rights as protected by 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the United States Constitution." In that civil action he alleged that the 1976 general town zoning revision had erroneously rezoned the lot he later purchased from M–1 Manufacturing to R–20 Residential. He sought a declaration that the lot was in fact intended to remain zoned M–1 and that he was entitled to "taking" damages and counsel fees.

A Superior Court justice, after trial that addressed only the question of the validity of the 1976 zoning revision ordinance as it pertained to that portion of Penn–Central's land that Brunelle had some nine years later purchased, found that the lot had been mistakenly advertised and that proper notice had not been given to Penn–Central. He then enjoined the town "from interfering with Brunelle's use of the property for all purposes permitted in an M–1 zone, and ordered [the town] to correct the error made by returning the subject property back to its original M–1 classification." Thereafter, Brunelle sought attorney's fees. His motion for those fees was denied and he appealed that denial to this Court. In an order entered on that appeal, this Court concluded that

"[t]he trial justice did not err in declining to award attorney's fees pursuant to 42 U.S.C. § 1988 incident to plaintiff's claim of deprivation of a constitutional right under 42 U.S.C. § 1983. In the case at bar the relief granted to the plaintiff against the Town of South Kingstown was based entirely on state law relating to the validity of a zone change which had purportedly been made in 1976. At that time the plaintiff was not the owner of the property in question. Consequently, no constitutional right of this plaintiff was addressed or could have been addressed in the instant litigation." *Brunelle v. Town of South Kingstown,* No. 90–599–A. (R.I., order filed Oct. 18, 1991).

---

1. The lot street frontage variance approved in October 1985 for residential use of the lot, self expired on October 23, 1986, because of its no-nutilization pursuant to § 528 of the town's zoning ordinance.

Following that order, Brunelle amended his complaint, increasing his claim for damages. The amended complaint was again couched in the form of a civil rights action under 42 U.S.C. § 1983. He alleged that the town officials, in refusing to amend and change the zoning ordinance and zoning map's R–20 depiction of his lot had under color of state law, (1) violated the takings clause of the Fifth Amendment to the United States Constitution, (2) violated the substantive due process component of the Fourteenth Amendment to the United States Constitution, and (3) violated the procedural due process component of the Fourteenth Amendment to the United States Constitution.[2] A trial on his amended complaint followed in the Superior Court. A trial justice, sitting without a jury after trial, entered judgment in favor of Brunelle and awarded damages and attorney's fees.

■ The parties each filed their appeals to this Court, alleging various errors. Brunelle asserts that the trial justice properly found in his favor but erred in computing his damages. The defendants on the other hand contend that there was no evidence of any federal law or federal constitutional violation to support the trial justice's judgment and that the award of attorney's fees was both unwarranted and excessive.[3]

■ In this appeal we review a decision by a trial justice sitting without a jury. In so doing, we extend deferential consideration to the findings made by a trial justice and will not disturb those findings unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong. *Wickes Asset Management, Inc. v. Dupuis*, 679 A.2d 314, 317 (R.I.1996); *Picerne v. Wellington Group, Inc.*, 673 A.2d 453, 454 (R.I.1996); *Morgan v. City of Warwick*, 510 A.2d 1297, 1299 (R.I.1986).

The trial justice in this case found that the town council had violated Brunelle's constitutional rights and that he suffered a confisca-

tory regulatory taking. In making that finding, she stated in part:

"There is no doubt here that Mr. Brunelle suffered a confiscatory regulatory taking for a period of time. However, the Court declines to rule that, as a result, he was deprived of all economically viable use of the land as, in my opinion, is required under the law. Even if that requirement is not fulfilled, however, a regulatory taking can be compensable if the ordinance in question does not substantially advance any legitimate state interests.

"In this case, the town Planning Board, upon the recommendation of the town planner, approved of the change of plaintiff's property from R–20 to M–1. On October 11th of 1988, it was the Town Council which denied Mr. Brunelle's request. As of the date of Mrs. Prager's memorandum, September 19th, 1988, it was clear and unequivocal that a mistake in transmittal onto the map had occurred and that plaintiff's parcel was erroneously designated R–20 on the map in contravention of the comprehensive land plan. The change, which Mr. Brunelle had a clear entitlement to, was not effectuated until this Court, in 1990, ordered that do be done.

" * * * In light of the evidence, the action of the Town Council in 1988 was arbitrary and capricious."

## II

### Analysis

Brunelle's claim for damages and attorney's fees is in the form of an action filed under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988. That federal law states in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United

---

**2.** The parties have not raised the issue of procedural due process before this Court, and we therefore need not address it.

**3.** Because we later conclude that Brunelle failed to demonstrate any violation of federal law, we need not address any question about the immuni-

ty of any defendant. Furthermore, a defense of immunity is an affirmative defense properly raised at the pleadings stage or thereafter waived. *See Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

Although initially adopted to provide a remedy for racial discrimination, this statute has come to be used to enforce a variety of federal constitutional violations as well as violations of other federal law. Properly understood here, Brunelle seeks to redress violations of the Fifth and Fourteenth Amendments to the United States Constitution through 42 U.S.C. § 1983.

■ There are two essential components to a viable § 1983 claim. First, the plaintiff must allege and prove that some person or state governmental entity, while acting under color of state law, has deprived him of a federal right secured by federal law or constitution. Second, the plaintiff must identify the federal right alleged to have been violated. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981); *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1526–27 (1st Cir.1983).

■ Section 1983 of 42 U.S.C. provides a " 'civil remedy' for deprivations of federally protected rights caused by persons acting under color of state law * * *." *Parratt,* 451 U.S. at 535, 101 S.Ct. at 1913, 68 L.Ed.2d at 428. That federal statute, it should be noted, however, does not confer substantive rights, rather it serves to redress deprivations of rights secured by the Federal Constitution or federal statutes.[4] Accordingly, in the review of any § 1983 civil action there are two immediate subjects of inquiry, namely, who and what. First, *who* acting under color of state law has caused the plaintiff's alleged deprivation, and second, of *what* federal right, privilege, or immunity secured by the Federal Constitution or federal statutes has the plain-

tiff been deprived? *W.B. v. Matula,* 67 F.3d 484, 493 (3rd Cir.1995). We find in the record before us clear showing of the "who" subject of inquiry, namely, municipal officials and officers acting under color of state law, but it is more difficult to identify from that record the "what" federal right, privilege, or immunity secured to Brunelle that the trial justice determined he had been deprived of by any of the defendants. This case turns on the "what" component, namely, whether Brunelle has shown any deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Chiplin,* 712 F.2d at 1527.

### A. The Takings Claim

■ In attempting to satisfy the "what" component, Brunelle initially contends that defendants deprived him of the right embodied in the takings clause of the Fifth Amendment to the United States Constitution. He maintains that the period during which defendants refused to rezone his parcel until ordered to do so by the Superior Court in December 1990 was a sufficient governmental interference with his property so as to amount to a taking. We disagree.

The Fifth Amendment to the United States Constitution, which is made applicable to the states through the Fourteenth Amendment provides in pertinent part, "[N]or shall private property be taken for public use, without just compensation." We recognize that under this provision, when the government interferes with an individual's property rights, a point may be reached when the governmental interference amounts to a taking and the government must then compensate the individual for that interference.

■ Of course the clearest takings result from physical intrusion. These are takings per se and always necessitate compensation. *See Lucas v. South Carolina Coastal Coun-*

---

4. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408

U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). The Fifth Amendment protection against a taking of property may be invoked to protect property rights that stem from an independent source such as state law. *See, e.g., Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

*cil,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798, 812 (1992). However, this Court as well as the United States Supreme Court has acknowledged, "Governmental action short of actual acquisition of property may be a constructive taking or inverse condemnation within the meaning of the Fifth * * * Amendment[ ] if such action deprives the property owner of all or most of his interest in the subject matter." *E & J Inc. v. Redevelopment Agency of Woonsocket,* 122 R.I. 288, 290, 405 A.2d 1187, 1189 (1979); *see also First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California,* 482 U.S. 304, 316, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250, 265 (1987) (recognizing regulatory takings); *United States v. General Motors Corp.* 323 U.S. 373, 378, 65 S.Ct. 357, 359–360, 89 L.Ed. 311, 318 (1945).

When a governmental interference does not amount to a physical intrusion, the United States Supreme Court has recently recognized two other instances wherein takings analysis is appropriate. *See generally Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). First, there are those instances in which a governmental regulation denies a landowner of *all* economically beneficial use of his or her property. The Court has essentially assigned categorical treatment to such cases and has held that just compensation must be paid unless the state can demonstrate that the use prohibited by the governmental regulation was not a permitted use under the land-owner's title to begin with, for example, such as the intended use being a public or private nuisance. *Id.* at 1027–31, 112 S.Ct. at 2899–2901, 120 L.Ed.2d at 820–22. The Court explained:

> "[T]he owner of a lakebed, for example, would not be entitled to compensation when he is denied the requisite permit to engage in a landfilling operation that would have the effect of flooding others' land. * * * Such regulatory action may well have the effect of eliminating the land's only economically productive use, but it does not proscribe a productive use that was previously permissible under relevant property and nuisance principles." *Id.* at 1029–30, 112 S.Ct. at 2900–01, 120 L.Ed.2d at 821.

Apart from that categorical approach the Court has also recognized a second instance deemed appropriate for takings analysis. That second situation involves those instances in which governmental regulations, although not denying a property owner all economic benefit from his or her land, nonetheless substantially serve to reduce the economic value of the landowner's property. Here again, however, as long as the state has the power to regulate the land under state nuisance law principles, there is no compensation owing. Alternatively, when the regulation is derived from the state's general police powers as opposed to its authority to abate a nuisance, a court should examine "the economic impact of the regulation on the claimant and * * * the extent to which the regulation has interfered with distinct investment-backed expectations," to determine if compensation must be paid. *Lucas,* 505 U.S. at 1019 n. 8, 112 S.Ct. at 2895 n. 8, 120 L.Ed.2d at 815 n. 8 (quoting *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, 648 (1978)). In cases of substantial economic impact and interference with "investment-backed expectations," just compensation must be paid. A court should be quick to recognize, however, that a mere governmental interference with one's particular exploitation of a parcel of land is generally insufficient to require compensation, and the court should consider the impact of the regulation on the value of the entire property to determine if a compensatory taking has in fact occurred.

We conclude that Brunelle's taking claim here is properly analyzed according to the principles enumerated under the latter case setting. There was no physical municipal intrusion here upon Brunelle's lot, and we agree with the trial justice that the denial of Brunelle's zoning change petition did not deprive Brunelle of *all* economic benefit of his property. *See Alegria v. Keeney,* 687 A.2d 1249 (R.I.1997).

We recognize that neither party in this appeal claims that the denial of Brunelle's zoning request petition was grounded upon defendants' authority to abate a nuisance

according to Rhode Island law. Rather this was a case wherein municipal defendants regulated Brunelle's lot pursuant to a municipal zoning ordinance enacted pursuant to the state's general police powers delegated to the defendant town by the state. In such cases, compensation may be due depending upon the economic impact of the municipal action. In this case we agree that the denial of Brunelle's requested zone change did have somewhat of an impact upon the value of his property, but we do not believe that compensation is required for the simple reason that Brunelle, when he purchased the lot, did so with full knowledge of its alleged erroneous zone restriction that, even if later changed and corrected by defendant town council, would not have permitted him to put the land to his intended use. His claim of an investment-backed expectation therefore cannot be supported. The case records and exhibits, as previously noted, clearly disclose that Brunelle's lot, regardless of whether it was zoned R–20 Residential or M–1 Manufacturing, could not have been used by him for his intended mini-storage or self-storage business. The South Kingstown zoning ordinance in effect at the time he purchased the lot in 1985 did not permit a mini-storage or self-storage business as a matter of right in any zone district, and Brunelle admits that he was made aware of that fact by Prager, the town planner, prior to his taking title to the lot in December 1985. In fact the town zoning ordinance did not permit Brunelle's intended use of the lot until the town council amended the zoning ordinance on January 11, 1988, and provided for mini-storage use in a manufacturing M–1 zone district. If in fact the building inspector had issued the building permit requested by Brunelle in December 1985, it would have been a nullity. The building inspector at that time had no authority to issue a building permit for a use not authorized by the zoning ordinance or for use of a lot that lacked required street frontage. See *Town of Charlestown v. Beattie,* 422 A.2d 1250, 1252 (R.I.1980) (and cases cited therein).

Furthermore, even after January 11, 1988, Brunelle had no recognized legal right or clear entitlement to use his lot for mini-storage or self-storage in either an R–20 Residential or an M–1 Manufacturing zone because his lot was then a substandard lot, lacking the required street frontage necessary to obtain a legal building permit. Prior to his taking title to the lot, he was certainly aware of the lot's street frontage deficiency. He had, as noted earlier, requested that Penn–Central join with him in petitioning for a street frontage variance in order for him to use the lot for residential purposes as permitted in an R–20 Residential district. Penn–Central had not only refused but later in its deed of conveyance to Brunelle specifically denied him any right of access over any of Penn–Central's adjoining and surrounding lands and restricted the lot's ingress and egress to the private roadway. So it is clear beyond cavil from the record before us that Brunelle was aware that the substandard lot that he purchased had only 69 feet of frontage onto that private road, Railroad Avenue, and that it lacked the required 100-foot street frontage necessary for R–20 Residential use as well as the 150-foot street frontage required and necessary for M–1 Manufacturing use. *See* South Kingstown Zoning Ordinance, § 316; article 2, section 230.

■ Furthermore, we do not discern from the record that the economic impact here, which would restrict Brunelle's use to residential purposes, was significant enough to create a taking. Even under his lot's residential-zone designation he was permitted to use the property for all residential uses permitted, provided, of course, that he could first obtain street-frontage relief from the zoning board, which relief the board had previously granted him for residential-use purposes.

### B. The Substantive Due Process Claim

■ Brunelle next asserts that defendant town council's action in refusing to grant his request for a change of zone was arbitrary and capricious and as such violated the due process clause of the Fourteenth Amendment to the United States Constitution. The trial justice apparently agreed.[5]

---

5. The trial justice concluded, "[A] regulatory taking can be compensable if the ordinance in ques-

 "[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." *Sinaloa Lake Owners Association v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989); *see also Jolicoeur Furniture Co. v. Baldelli*, 653 A.2d 740 (R.I.1995). "To establish a violation of substantive due process, the plaintiffs must prove that the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Sinaloa*, 882 F.2d at 1407 (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303, 314 (1926)). Additionally that action must be directed at a fundamental right protected under the due process clause. *See, e.g., Jolicoeur*, 653 A.2d at 750.

 We question whether Brunelle ever possessed a protected property interest in the granting of a zoning change petition. *See, e.g., Maryland Reclamation Associates, Inc. v. Harford*, 342 Md. 476, 677 A.2d 567 (1996) (no protected interest in a discretionary decision). We nonetheless must ultimately reject his due process contention because we conclude that the governmental action here was not the type of arbitrary or capricious activity violative of any particular Fifth or Fourteenth Amendment Constitutional right. *See L.A. Ray Realty v. Town Council of Cumberland*, 698 A.2d 202 (R.I. 1997). Although defendants were ultimately mistaken in their reliance upon the 1976 zoning revision as it applied to Brunelle's lot when considering Brunelle's zoning amendment petition, there is ample evidence in the record that this reliance was a good faith as well as unintentional error and that the town council's denial of Brunelle's zone change petition in October 1988 was legitimately related to the valid land use requirements of the town's zoning ordinance as well as to the town council's interest and concern for the

health and welfare of the local residents and abutting residential land owners. *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir.1992). The record of the town council public hearing on Brunelle's zone change request indicates that more than ample proper and legitimate questions were raised and objections voiced concerning the effect of Brunelle's proposed facility on the surrounding community including such concerns as increased traffic on the limited private roadway serving as the only access to Brunelle's lot, the roadway's flooding, the lack of adequate lot street frontage, and increased pollution of the water table. On this basis we conclude that defendant town council's decision was not the type of arbitrary or capricious behavior sufficient to rise to the level of a constitutional violation. The denial of a zoning change request by a landowner does not serve automatically to trigger a 42 U.S.C. § 1983 claim. *See PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31–32 (1st Cir.1991); *Jolicoeur*, 653 A.2d at 751.

We are unable to conclude from the record before us the existence of any federal statute or federal constitutional provision securing to Brunelle any federal right to knowingly purchase a substandard lot and then to use that lot in clear violation of specific land use regulations such as adequate street frontage requirements contained in an acknowledged valid zoning ordinance enacted by a municipality pursuant to a special enabling act of the State General Assembly. The trial justice in her decision referred to none.

We conclude that the trial justice in this case erred in that she clearly overlooked and misconceived the material trial evidence as it pertained to the town council's denial of Brunelle's request for a change of zone. The trial justice appears to have placed monolithic weight upon the fact that the town planning board had recommended approval of Brunelle's zone change request. In so doing, however, she failed to note and consider that

---

tion does not substantially advance any legitimate state interests." In view of the Supreme Court's latest pronouncement with respect to takings, *see Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798

(1992), we believe that a discussion of the arbitrariness or capriciousness of a particular state action is properly examined under the light of the Fourteenth Amendment due process clause and not the Fifth Amendment takings clause.

the planning board's May 9, 1988 approval was specifically conditioned.

> "The Board recommends that approval should be conditioned on the applicant seeking ownership of the private right-of-way known as Railroad Avenue; stone sealing the road surface within the right-of-way and clearing and grading the road shoulders along the same stretch of road."

The record further shows that Brunelle's attorney in a letter dated October 7, 1988, just after the tumultuous public hearing on Brunelle's zone change request, admitted that Brunelle had failed to meet the planning board's condition. In her letter to the town solicitor she advised that the status of the ownership of the private right of way, Railroad Avenue, was still being researched and that because of that "outstanding issue and other issues and questions that were raised at the public hearing regarding the zoning and traffic questions," Brunelle wanted to *withdraw* his request for the zone change and "reanalyze the situation." The trial justice failed to assess and evaluate the importance of the lot's substandard nature and the private right of way issue noted in Laurence's October 7, 1988 letter.

Overlooked also in the trial justice's award of damages was the undisputed fact that Brunelle's lot, with or without the requested zone change, was a substandard lot purchased by him in 1985 with full knowledge that the lot, portioned out of surrounding and abutting Penn–Central land, lacked required zoning ordinance street frontage, and that Brunelle, absent obtaining street frontage relief from the town zoning board, could not legally obtain a town building permit. The town's zoning ordinance required lots in an R–20 Residential zone to have a minimum street frontage of 100 feet, while lots located in an M–1 Manufacturing zone were required to have a minimum of 150 feet of street frontage. Brunelle's substandard lot had only 68.95 or 69 feet of frontage on Railroad Avenue, a *private right of way*, that the evidence revealed was subject to periodic flooding because of rain and snow accumulation. In light of that clear and undisputed evidence before the town council, the trial justice's finding that defendant town council's

action, when it denied Brunelle's request for a zone change in order to construct and rent some 300 or more mini-rental storage units as well as a professional office building on his substandard lot, was "arbitrary and capricious" is not supported by the trial evidence.

It is not enough for a plaintiff simply to set out allegations with constitutional labels such as "due process" or "equal protection" in his or her civil action complaint and then expect those labels to self elevate those allegations into a 42 U.S.C. § 1983 action. *Chesterfield Development Corp.*, 963 F.2d at 1104.

For the foregoing reasons Brunelle's appeal is denied and dismissed. The defendants' appeal is sustained. The judgment appealed from is reversed, and the papers are remanded to the Superior Court with direction to dismiss the plaintiff's action.

FLANDERS and GOLDBERG, JJ., did not participate.