DECISION
Before this Court is a motion to vacate four decisions of the Director of the Rhode Island Department of Labor and Training (the Department), Adelita S. Orefice (Director). After receiving a recommendation from the Board of Examiners of Electricians (the Board), the Department, through its Director, cited the Plaintiffs — Unistrut Corporation (Unistrut) and its employees, Scott Waage (Waage), Mark Watson (Watson), Raymond Parent (Parent) and Dean Wheeler (Wheeler) — for performing electrical work without the requisite licensing.[1] The Plaintiffs seek this Court to vacate and reverse the decisions. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
Unistrut is a New Jersey corporation that has been engineering, designing, and installing medical equipment support systems for over five decades. Exhibit 4 from November 17, 2004 Hearing. In 2004, Walsh Brothers was the general contractor for a new emergency room facility that was being constructed at the Rhode Island Hospital. See Hearing Transcript (Tr.) at 35. A subcontractor of Walsh Brothers, Capco Steel, Inc., contracted with Unistrut to install what it termed as "highly specialized structural engineered medical equipment supports." Id. at 35-36. The national sales manager, Scott Patchan, testified that Unistrut engaged union carpenters to install such supports. Id.
at 35.
On September 30, October 1, and October 6, 2004, the Department's Chief Electrical Investigator, Glenn Dusablon (Dusablon), inspected the construction project and observed plaintiffs Watson, Parent, and Wheeler installing Unistrut's supports.[2] Id. at 9-10. On all three occasions, Dusablon concluded that the men were performing electrical work without valid licenses and issued each of them a "Notice of Violation" pursuant to G.L. 1956 § 5-6-2 of the Electricians Act (the Electricians Act), and entitled "Work for which a license is required." Dusablon also issued simultaneous violation notices to Unistrut's project manager, Waage, for employing three unlicensed workers, for not having a contractor's license, and for failing to have a City permit.
On October 5, 7, and 8, 2004, Assistant Director of the Department, Kathryn G. Serrecchia, issued cease and desist orders against the plaintiffs.[3] Each cease and desist order also assessed fines that amounted to a grand total of $19,200.[4] The parties were ordered to pay the fines within thirty days "unless an appeal is filed with the Board of Examiners of Electricians. . . ."[5] The Plaintiffs appealed the orders to the Board.
On November 17, 2004, the Board considered the Plaintiffs' appeals from the cease and desist orders. After the hearing, the Board concluded that installation of the supports constituted apparatus requiring an electrical license. Id. at 74. It then voted to recommend to the Director that she deny the appeals.Id. at 75. The Director accepted the recommendation and issued four decisions denying the appeals. The Plaintiffs timely appealed those decisions to this Court by filing a motion to vacate. Additional facts will be supplied below.
 Standard of Review
The Superior Court reviews the decisions of the Department and other state administrative agencies pursuant to § 42-35-15. Section 42-35-15(g) provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court's review of an administrative agency decision under §42-35-15 is limited in scope. See Mine Safety Appliances v.Berry, 620 A.2d 1255, 1259 (R.I. 1993). It must give great deference to an agency's final decision. See Murray v.McWalters, 868 A.2d 659, 662 (R.I. 2005) ("The law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency.") (quoting In re Lallo, 768 A.2d 921, 926 (R.I. 2001)). Furthermore, "[w]hen a trial court reviews a decision of an agency, the court may affirm or reverse the decision or may remand the case for further proceedings." Birchwood Realty, Inc.v. Grant, 627 A.2d 827, 834 (R.I. 1993) (citing § 42-35-15(g)). This Court's review is restricted "to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." JohnstonAmbulatory Surgical Assocs., Ltd. v. Nolan, 755 A.2d 799, 805
(R.I. 2000) (emphasis added) (quoting Barrington Sch. Comm. v.R.I. State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992)).
This Court "`may not, on questions of fact, substitute its judgment for that of the agency whose action is under review,' . . . even in a case in which the court `might be inclined to view the evidence differently and draw inferences different from those of the agency." Id. (internal citations omitted). Moreover, "[t]his Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact."Tierney v. Dep't of Human Servs., 793 A.2d 210, 213
(R.I. 2002) (citing Technic, Inc. v. R.I. Dep't of Labor Training, 669 A.2d 1156, 1158 (R.I. 1996)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalRes. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1971). It is well settled, however that "[q]uestions of law . . . are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts."Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 6 (R.I. 1977).
 Analysis
The Plaintiffs assert that their substantive and procedural due process rights were denied because the cease and desist orders and administrative penalties were issued before they received a hearing.[6] They further contend that the Department violated § 42-35-15(g) when it issued the orders "without a meaningful investigation derived from reliable or probative evidence. . . ."
It is undisputed that the Plaintiffs did not have electrical licenses; however, the question is whether licenses were needed to perform the type of work that they were performing. Consequently, this case involves, in large part, the statutory interpretation of chapter 6 of title 5 of the Rhode Island General Laws. Specifically, it involves the interpretation of the enforcement provisions of the statute and the provisions relating to the determination of the type of work that requires an electrical license.
This Court reviews issues of statutory interpretation denovo. See Palazzolo v. State ex rel. Tavares, 746 A.2d 707,711 (R.I. 2000). Where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees' RetirementSystem of State v. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). However, when statutory provisions are unclear or ambiguous, this Court examines the statute in its entirety. In re Advisory to the Governor, 668 A.2d 1246, 1248
(R.I. 1996).
This Court also must be mindful that where "the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized."Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 345
(R.I. 2004). However, "[a]n agency cannot modify the statutory provisions under which it acquired power, unless such an intent is clearly expressed in the statute." Little v. Conflict ofInterest Commission, 121 R.I. 232, 236, 397 A.2d 884, 886
(1979). Furthermore, "[t]his Court will not construe a statute to reach an absurd result." State v. Flores, 714 A.2d 581, 583
(R.I. 1998) (quoting Kaya v. Partington, 681 A.2d 256, 261
(R.I. 1996)).
A. The Due Process Claims
The Plaintiffs assert that their "substantive and due process [rights] were violated when the notices of violation were issued by the chief electrical investigator without any meaningful investigation into the facts and circumstances and without any explanation. . . ." They further maintain that "the cease and desist orders contravened the statute, deprived the Plaintiffs of their due process rights, and every step that was taken thereafter is fruit of the poisonous tree. . . ."
The purpose of substantive due process is to guard "against arbitrary and capricious government action." Kaveny v. Town ofCumberland Zoning Bd. of Review, 875 A.2d 1, 10 (R.I. 2005) (quoting Brunelle v. Town of South Kingstown, 700 A.2d 1075,1084 (R.I. 1997)). To establish a violation of substantive due process, parties must show that the disputed provisions are "`clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" Kaveny, 875 A.2d at 10 (quoting Brunelle,700 A.2d at 1084); see also L.A. Ray Realty v. Town Council of Townof Cumberland, 698 A.2d 202, 211 (R.I. 1997) ("A regulation that takes property violates the substantive due process clause if it is arbitrary, discriminatory, or irrelevant to a legislative policy."). Furthermore, "substantive due process prevents the use of governmental power for purposes of oppression, or abuse of governmental power that is shocking to the conscience, or legally irrational action that is not keyed to a legitimate state interest." Id.
The Rhode Island Supreme Court has recognized that "[i]n procedural due process claims, the deprivation by state action [which is] of a constitutionally protected interest in `life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Id. at 213 (quoting Zinermon v. Burch,494 U.S. 113, 125 (1990)). Thus, procedural due process is implicated when a person is deprived of constitutionally protected property interest and not given an adequate hearing.See L.A. Ray Realty, 698 A.2d at 211 (stating that the existence of sham pre-deprivation hearings and combined with "an absence of an adequate post-deprivation remedy `gave rise to plaintiffs' procedural due process claim.").
A review of the statute governing electricians reveals that its purpose is to license and regulate persons, firms, and corporations which handle all aspects of electrical work. This clearly constitutes an exercise of the state's police power.See Kent County Water Authority v. State Dept. of Health,723 A.2d 1132, 1135 (R.I. 1999) (stating that where a licensing fee "has for its primary object the regulation of the business, trade, or calling to which it applies, its exercise is properly referable to the police power. . . ."); see also People v.Hall, 287 N.W. 361, 363 (Mich. 1939) (observing that "[t]he regulation of electricity is a proper exercise of the police power."). As such, the Plaintiffs' substantive claims must fail because the statute is not "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Kaveny, 875 A.2d at 10.
The Plaintiffs' procedural due process claims implicate §§5-6-4 and 5-6-32. Section 5-6-4(c) provides:
 "The director of labor and training has the power to revoke or suspend the certificate or license or impose a fine upon the certificate or license holder, for all certificates and licenses issued by the division of professional regulation, after a hearing before and upon the recommendation of the board of examiners of electricians." Section 5-6-4(c) (emphasis added).
Section § 5-6-32, entitled "Authority of director to assess penalty" provides:
 "(a) The director may assess an administrative penalty on any person, firm, or corporation for any violation of the provisions of this chapter, after notice and a hearing, before and upon the recommendation of the board of examiners of electricians in the amount of five hundred dollars ($500) for the first violation and nine hundred fifty dollars ($950) for a subsequent violation. . . .
 (b) The chief of the section shall act as an investigator with respect to the enforcement of all the provisions of law relative to the licensing of electricians and, to this effect, whenever a complaint is made by the chief of the section to the director of the department of labor and training or his or her designee that the provisions of this chapter are being violated, the director of the department of labor and training or his or her designee may issue an order to cease and desist from that violation and may impose the above penalties
against the violator and against the contractor. (Emphasis added.)
Finding that the above provisions are clear on their face, this Court it will give them their plain meaning. Section 5-6-32
contains two separate subsections. Subsection (a) gives the Director the power to enforce the statute by assessing administrative penalties in the form of monetary fines. However,before such penalties may be imposed, the Board must conduct a duly noticed hearing and make a recommendation to the Director. Such procedures allow the Director to consider the recommendation in reaching a decision.
Subsection (b), however, permits the Director or his or her designee to use valid police powers to issue a cease and desist order without a prior hearing. It further permits the imposition of "the above penalties." Those penalties are regulated by subsection (a) which, as stated, only may be imposed by the Director upon receipt of a recommendation from the Board after a duly conducted hearing.
The violation notices that were given to the Plaintiffs contain the following language:
 "Any person who has violated any provisions of chapter 6 of title 5 entitled "Electricians,". . . whether duly registered with the office of the secretary of state or not, and has been levied a fine by the director of labor and training, and is not licensed with the department of labor and training, division of professional regulation, is required to submit penalties due to the department of labor and training, division of professional regulation, within thirty (30) days of notice of the fine or penalty, or the director of the department of labor and training shall have the power to institute injunction proceedings in superior court." G.L. 1956 § 28-22-2(b).
The subsequent cease and desist orders were signed by an Assistant Director to the Department. Fines were included in each of the cease and desist orders, and the plaintiffs were given thirty days to either pay the fines or to appeal to the Board. Had the Plaintiffs refused to pay the fines and also failed to file an appeal, the Director would have had the "power to institute injunction proceedings in superior court" pursuant to §28-22-2(b), despite the fact that the Plaintiffs had not been afforded a hearing.
Because the Plaintiffs did not receive a hearing until after
the fines were imposed, they were denied their procedural due process on the fine issue. Consequently, this Court vacates the imposition of said fines. The cease and desist orders, however, did not require a pre-deprivation hearing. Since the Plaintiffs received a prompt post-deprivation hearing on the merits of the cease and desist orders, they received an adequate remedy and do not have a valid procedural due process claim on this issue.See L.A. Ray Realty, 698 A.2d at 213 (holding that "an adequate postdeprivation remedy satisfies due process").
B. The Board's Recommendation
The Plaintiffs maintain that "[i]t is undisputed . . . that the plaintiffs did not install any electrical fixtures, surgical lighting or surgical equipment to the metal framing structures. . . ." Plaintiffs' Memorandum of Law at 8. The crux of the Plaintiffs' argument is that they never performed any electrical work; instead, they merely installed metal framing support systems which contained no electrical component whatsoever. Consequently, they maintain that "[t]he decisions. . . were arbitrary and capricious because the plaintiffs were union carpenters, not electrical contractors and were not subject to the jurisdiction of the board of examiners of electricians." The Plaintiffs further maintain that much of the Department's Memorandum of Law improperly relies upon the National Electrical Code (NEC) to support its justification for denying the appeals. See
Plaintiffs' Reply Memorandum at 1-2. They contend that because they were cited for violating state law, the NEC did not apply.
The Department counters that the record demonstrates that the Plaintiffs "were installing apparatus meant to hold and support lighting fixtures[,]" and that as such, the work violated the Electricians Act. Defendant's Memorandum of Law at 4. It contends that because it had the authority to interpret and enforce the statute, this Court should give deference to the Department's interpretation, provided that it was not clearly erroneous or unauthorized.
Before addressing the merits of the Plaintiffs' motion to vacate, this Court first will examine whether the NEC applies to this case. Section 5-6-26, entitled "Compliance with requirements of division or of electric company," provides in pertinent part:
 "All electrical work which is done in cities and towns not having their own rules and requirements shall be done in accordance with any rules and requirements that are specified by the division of professional regulation . . . Any rules made or approved, shall be based upon some definite edition of the `National electrical code' with any changes or additions that are deemed required. Section 5-6-26 (emphasis added).
On August 1, 2002, the Rhode Island Building Code Standards Committee (Committee) re-adopted "the provisions of the National Electrical Code, 2002 edition, as published by the National Fire Protection Association, as the Rhode Island Electrical Code, together with the amendments thereto. . . ." See Rhode Island Electrical Code Regulation SBC-5-2002. Furthermore, section 2 of the Board of Examiners of Electricians Rules and Regulations provides that pursuant to § 5-6-26,
 "the Division of Professional Regulation does hereby and adopt and specify provisions of the National Electrical Code as its official Rules and regulations and requirements for performance of electrical work. A copy of said National Electrical Code, plus any amendments thereto, which the division may adopt from time to time, shall, when filed in the office of the Secretary of State be deemed to be official." 8 Code RI Regulations, Rule 16060 004-2 at 2 (2000).
In the present case, The Chief Electrical Inspector for the City of Providence, David Cenci (Cenci), testified that his job is to ensure that the NEC is followed on all jobs. Tr. at 19. It is clear from the foregoing that Providence follows the NEC as amended by the Committee. Consequently, this Court finds that the code, as amended, is applicable in this case and it will now address the contentions of the parties.
In order to address those contentions, this Court first must supply additional background facts. As previously stated, on September 30, October 1, and October 6, 2004, the Department's Chief Electrical Investigator, Dusablon, visited the job site and personally observed plaintiffs Parent, Watson, and Wheeler installing what he termed as "supports for operating room lighting and operating room equipment." Tr. at 10. He testified that he "had a set of plans, looked at it, saw that the work was designated, the equipment being designed and installed was for light support and equipment support, deemed as apparatus." Id.
Dusablon then concluded that the plaintiffs were performing electrical work without a license and issued the violation notices. Id.
At the hearing, Cenci testified to the following:
 "MR. CENCI: Being that this was designed to hold this light fixture, it does need a permit under — you take 90-4 and 90-7, of the NEC codes, because they turn around and put this fixture with this Unsure, and designed it to hold it and so forth.
 In reality, it should [have] been a UL Approved device with a testing laboratory checking this thing out and the weight of this fixture.
 "THE CHAIRMAN: Just out of curiosity, if the fixture were installed in this assembly, and it came down, the assembly failed, who would you find in violation?
 "MR. CENCI: We'd go after the electrician." Id. at 20-21.
When later asked whether the NEC "require[s] the installer of a light fixture to provide adequate support," Cenci answered in the affirmative. Id. at 23. He further testified that he should have been alerted as to the existence of the support system so that he could "make sure it's proper, the weight — it can hold the weight, and UL approves of it for grounding and so forth."Id. at 55.
Electrical Inspector David Riley (Riley), from the Providence Electrical Inspector's Office, testified that when he inspected the site, "I was unaware that someone other than EW Audette was, in fact, installing the supports for the operating room light fixtures." Id. at 24. He further testified that when he asked "what the support was for and they said, `The operating light fixture.'" When Riley was asked: "Would that require those to be covered by an electrical permit?" Id. Riley responded, "Absolutely." Id.
On cross examination, defense counsel asked Riley whether he ever had observed any of the plaintiffs installing an electrical light fixture. Id. at 25. He responded:
 "No. The job is in a state where there are no electrical light fixtures on the job except for temporary lighting. It's still in the rough stage. The Unistrut you're questioning is going to be for supports for light fixtures when the room is completed." Id.
Riley then testified that the licensed electrician on the job, EW Audette, would be installing the lighting fixtures. Id. He later stated that the intent of the structure "is for the surgical light operation." Id. at 56.
Scott Patchan testified on behalf of Unistrut as its national sales manager. Id. at 34. He testified that the products in question "are all highly specialized structural engineered medical equipment supports" and that the company has been employing carpenters to install them for the past sixty years.Id. at 35-36. He further stated that once the supports are installed, the company's involvement in the job is finished and an electrical contractor then installs the electrical equipment.Id. at 40-41. Later, Patchan testified that the support structure is UL approved "[a]s a raceway system." Id. at 52-53.
Thereafter, Waage testified at the hearing. Id. at 61. He stated that the structure "[d]oesn't transmit, doesn't conduct, doesn't carry" any electricity or wiring and does not require grounding. Id. He further testified that the purpose of the devices is to "[s]upport the light fixtures. . . ." Id. at 62.
Subsequently, Dave Palmisciano testified on behalf of the Carpenters Local Union 94. Id. at 63. As the senior representative of that union, Palmisciano testified that he has been dispatching carpenters to install such structures for Unistrut for the past fourteen years, and that there had never been any problems with licensing in the past. Id. at 63-64. In Palmisciano's opinion, the controversy amounted to a union issue.Id. at 64.
At the conclusion of the hearing, the Chairman of the Board, William Lepore, posed the following question: "Was there any doubt in anyone's mind that the code requires the installer of the lighting fixture to adequately support his equipment?" Id.
at 74. Not one member of the Board disagreed with the question. The Board found that the surgical light supports constituted apparatus for which an electrical license is required. Id. The Board then voted to recommend to the Director that she deny the appeals. Id. at 75. The Director accepted the recommendation and denied the appeals.
The Plaintiffs assert that the Board erroneously interpreted §5-6-2 when it determined that they were performing electrical work requiring a license. The Department stands by its determination that the medical equipment supports constituted apparatus within the meaning of the Electricians Act. At issue is the Board's interpretation of the word "apparatus" as contained in the statute.
As stated above, it "is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." In re Lallo, 768 A.2d 921, 926 (R.I. 2001). Furthermore, in construing a provision, "[t]his [C]ourt has long applied a canon of statutory interpretation which gives effect to all of a statute's provisions, with no sentence, clause or word construed as unmeaning or surplusage." Local 400, InternationalFederation of Technical and Professional Engineers v. RhodeIsland State Labor Relations Bd., 747 A.2d 1002, 1005 (R.I. 2000).
Section 5-6-2, entitled "Work for which license required," provides in pertinent part:
 "No person, firm, or corporation shall enter into, engage in, solicit, advertise, bid for, or work at the business of installing wires, conduits, apparatus, fixtures, electrical signs, and other appliances for carrying or using electricity for light, heat . . . unless that person, firm, or corporation shall have received a license and a certificate for the business, issued by the state board of examiners of electricians of the division of professional regulation of the department of labor and training in accordance with the provisions set forth in this chapter." Section 5-6-2(a)(1) (emphasis added). The Legislature did not define the meaning of the word "apparatus" in the statute; however it has previously been stated that "[w]hen a statute does not define a term, we generally interpret that term by employing the ordinary, contemporary and common meaning of the words that [the Legislature] used." United States v. Iverson, 162 F.3d 1015, 1022 (9th Cir. 1998)). Consequently, in view of the deference this Court must give to an agency in interpreting its enabling statute, coupled with the fact that words in a statute must not be construed as unmeaning or surplusage, this Court will employ the ordinary, contemporary and common meaning of the word apparatus.
In United States v. Migi, the defendant in that case was charged with possessing and/or distributing drugs within 1000 feet of a "playground" in violation of 21 U.S.C. § 860(e)(1).United States v. Migi, 329 F.3d 1085, 1086 (9th Cir. 2003). The defendant asserted that the land did not qualify as a playground because it did not contain "three or more separate apparatus intended for the recreation of children, including but not limited to, sliding boards, swingsets, and teeterboards." Migi,329 F.3d at 1087 (quoting 21 U.S.C. § 860(e)(1)). He contended that a basketball court, softball field and skating rink did not constitute separate apparatus for purposes of the statute and moved for judgment of acquittal.
The Ninth Circuit Court of Appeals disagreed. It defined apparatus as "`a collection or set of materials . . . [or] . . . appliances . . . designed for a particular use'" Migi,329 F.3d at 1088 (quoting Webster's Third New Int'l Dictionary 102 (unabridged 1986))). Applying this definition to the statute, the court held that "a basketball court, a softball field, and a skating rink each consist of a collection or set of materials or appliances designed for recreational use. Thus . . . [they] each are an apparatus." Migi, 329 F.3d at 1088.
The common meaning of apparatus may be gleaned from dictionaries. See Webster's New Universal UnabridgedDictionary 88 (2nd Ed. 1983) ("the instruments, materials, tools, etc. needed for a particular use, experiment, etc. . . . any complex device or machine."); American Heritage Dictionaryof the English Language 62 (1970) ("The totality of means by which a designated function is performed or a specific task is executed . . . A group of machines used together or in succession to accomplish a task."); The Compact Edition of the OxfordEnglish Dictionary 99 (1989) ("The work of preparing, preparation, preparatory arrangement, array . . . The things collectively in which this preparation consists, and by which its processes are maintained; equipment material, mechanism, machinery, material appendages or arrangements"); OxfordDictionary and Thesaurus, American Edition 62 (1996) ("the equipment needed for a particular purpose or function, esp. scientific or technical"). Similar in all these definitions is the feature of common function.
In the present case, although the construction being carried out at the Rhode Island Hospital still was in a rough, unwired stage when the Plaintiffs were cited, and while the plaintiffs did not intend to install any wiring or conduits, it is undisputed that the intended purpose of their contract was to supply supports for electrical fixtures. Thus, although the supports did not contain any wires, conduits, fixtures, electrical signs, and other appliances for carrying or using electricity for light at that time, by the completion of the project, all of the materials would be combined in a common function; namely, the provision of surgical lighting. Consequently, while this Court understands the plaintiffs' position, considering the Legislature's failure to narrowly define apparatus, this Court must apply the ordinary, contemporary, common meaning of the word apparatus and deny the motions to vacate and uphold the conclusion that the plaintiffs were performing electrical work without a license. The fines, however, are vacated because the plaintiffs were denied their procedural due process on this particular issue.
 Conclusion
After review of the entire record, with respect to the findings that the plaintiffs had performed electrical work without the appropriate licenses, this Court finds the Department's decisions are not clearly erroneous. Moreover, the Department's decisions on this issue are not in violation of constitutional or statutory provisions, arbitrary or capricious, characterized by abuse of discretion, or affected by error of law. Furthermore, substantial rights of the plaintiffs have not been prejudiced by this conclusion.
However, with respect to the decisions to uphold the imposition of the fines, this Court finds the Department's decisions are not supported by substantial evidence, not made upon proper procedure, and not in excess of the Department's statutory authority. Furthermore, the Department's decisions with respect to the fines are clearly erroneous, in violation of constitutional or statutory provisions; arbitrary, capricious and characterized by an abuse of discretion; and affected by error of law. Furthermore, substantial rights of the plaintiffs have been prejudiced. Accordingly, this Court upholds the Department's decisions in part and vacates the decisions in part. Counsel shall submit the appropriate judgment for entry.
[1] While the decisions did not state that the Plaintiffs had performed electrical work without the requisite licensing, they upheld fines imposed in previous cease and desist orders that were issued by a Department Deputy Director. Clearly, the Director would not have had the authority to uphold fines for performing work without a license unless she agreed with the Board's conclusion that the Plaintiffs had violated chapter 6 of title 5 of the Rhode Island General Laws, entitled the Electricians Act.
[2] Glenn Dubsalon testified that he made the inspection after receiving a complaint from one Ron Leddy. Leddy was the office manager for the International Brotherhood of Electrical Workers, Local No. 99 (IBEW). Hearing Transcript at 17. Counsel for the plaintiffs requested Board member Allen P. Durand to recuse himself because he held a position as "business agent" for IBEW.Id. at 12-13 and 18. Durand did not recuse himself. See Id.
at 37.
[3] On the advice of legal counsel, the plaintiffs ignored the violation notices and the cease and desist orders; instead, they continued working on the Unistrut project.
[4] The record reveals that Waage was assessed $12,000 in fines, while the three employees each were assessed fines of $2,400.
[5] The cease and desist orders informed the parties that an appeal would be available pursuant to § 5-6-2. This appears to have been a typographical error. However, the cease and desist orders informed the recipients that the orders were made "pursuant to the provisions of RIGL 5-6-et seq[.]" While the cease and desist orders may not have been as informative as they should have been, considering that the plaintiffs perfected their appeal, their substantial rights were not prejudiced.
[6] As required by Rule 24(d) of the Superior Court Rules of Civil Procedure, the Plaintiffs informed the Attorney General of their constitutional due process claims; however, the State declined their invitation to intervene.