BIRCHWOOD REALTY, INC.

v.

Malcolm J. GRANT et al.

No. 92–604–M.P.

Supreme Court of Rhode Island.

June 25, 1993.

Dean N. Temkin and C. Russell Bengtson, Carroll, Kelly & Murphy, Providence, for plaintiff.

Christopher Little, Providence, Claude Cote, Dept. of Environmental Management and James Sullivan, North Kingstown, for defendant.

OPINION

SHEA, Justice.

This case comes before this court pursuant to our granting of a petition for a writ of certiorari. The petitioner, Birchwood Realty, Inc. (Birchwood) is seeking relief from a Superior Court order remanding its application for a license to construct a landfill to the Department of Environmental Management (DEM) for additional evidentiary hearings.

Birchwood's primary argument is that the Superior Court has violated our ruling in *Newbay Corp. v. Annarummo*, 587 A.2d 63 (R.I.1991), by not issuing a writ of mandamus to DEM ordering DEM to grant Birchwood a license that would allow it to construct and operate a landfill. In *Newbay* we held that where the plaintiff had complied with all agency requirements for the issuance of an air permit and was denied that permit on the basis of its lack of compliance with a nonexistent rule, the proper course for the Superior Court was to issue a writ of mandamus to the agency directing that agency to grant the permit to the plaintiff. Birchwood argues that the Superior Court justice's action in remanding the full case to DEM for additional evidentiary hearings was a clear violation of *Newbay* and that instead the court should have ordered DEM to issue Birchwood a license.

Birchwood also asks that we hold that the acting director of DEM improperly overturned the hearing officer's findings of fact in rendering his final decision. More specifically, it argues that under the plain language of DEM's Rules of Practice and Procedure, DEM was bound by the findings of the hearing officer and that those findings must be considered to be the findings of the agency as a whole.

The present controversy arose out of Birchwood's September 1986 application to DEM for a license to operate a landfill in Richmond, Rhode Island. The proposed landfill was to be located next to an already existing landfill then being operated by the town of Richmond (Richmond). Birchwood's plan called for a facility designed to process 1,000 tons per day of municipal

solid waste. The DEM Division of Air and Hazardous Material (DAHM) began a staff review of the application and simultaneously referred it to the Solid Waste Management Corporation (the corporation) for a determination of the need for such a facility. At the time of Birchwood's application in 1986, a license to operate a landfill in Rhode Island could be issued only upon a showing of the need for such a facility. General Laws 1956 (1985 Reenactment) §§ 23-19-3(6) and 23-19-11.

On September 4, 1987, the corporation issued its advisory opinion. It found no present need for a facility the size Birchwood was proposing. The corporation did conclude, however, that a facility that would process 400 tons per day of demolition debris and construction waste would pass the need test. Accordingly the DEM hearing officer granted partial summary judgment in favor of Birchwood on the issue of need.

On September 3, 1987, because he had a conflict of interest, DEM's director, Robert L. Bendick, Jr., delegated his authority over the Birchwood application to his assistant, Malcolm Grant. Grant thereafter became the acting director of DEM for the purpose of assessing Birchwood's application. On September 4, 1987, the day the corporation issued its advisory opinion on the question of need, DEM also issued a notice of hearing for hearings to be held on the Birchwood application. The hearing notice stated that DAHM would recommend that Birchwood's license request be denied. There were various reasons for DAHM'S recommendation; they included Birchwood's alleged failure to demonstrate that the surrounding ground water would be afforded adequate protection from possible pollution from the construction and operation of the landfill.

At Birchwood's request the DEM hearing officer held a prehearing conference for the purpose of clarifying DAHM's reasons for recommending denial. During that prehearing conference, on September 17, 1987, DEM requested that Birchwood make several additions to the information contained in its application. Birchwood contends that some of these changes were not required by the State of Rhode Island—Department of Environmental Management—Division of Air and Hazardous Materials—Rules and Regulations for Solid Waste Management Facilities (rules or solid-waste rules), but that it agreed to comply in order to expedite the approval process. Meanwhile, the Environmental Protection Agency (EPA) had reviewed Birchwood's application. The EPA approved Birchwood's application with several design modifications. A second prehearing conference was held on October 8, 1987, at which Birchwood submitted extensive revisions to its landfill application. These included the revisions recommended by the EPA. Richmond, an intervenor in the proceeding, took the position that such extensive revisions constituted a new filing and that Birchwood should be required to begin the entire application process anew. However, without waiving that objection, Richmond and DAHM requested additional time to review the newly submitted materials.

On January 20, 1988, hearings on Birchwood's application commenced. Dennis H. Esposito, Esquire, whom Grant had appointed as hearing officer, presided over the proceedings. Esposito ordered the parties to submit prehearing memos for the purpose of clarifying the disputed issues and streamlining the case for hearing. He stated that he was "not going to allow additional issues to be raised without substantial reasoning as to why they weren't included in prehearing memos."

After conducting extensive hearings, the hearing officer issued his recommended decision to Acting Director Grant on October 24, 1989. In this decision, the hearing officer found that Birchwood had complied with all the solid-waste rules except Rule 9.14. In his written opinion, the hearing officer concluded that if the proposed facility was constructed in strict compliance with the design plan, it was not probable that contamination of the surrounding ground or surface waters would result. The hearing officer also found that in the case of proper construction, operation, and closure of the facility as designed, the pos-

sibility of failure of the system would be minimal.

Finally the hearing officer assessed the environmental impact to the surrounding area in the event that either contamination or failure, two events that he had found to be improbable, was to occur. Because of the location of the proposed landfill site, in the middle of a sole source aquifer, and the unique interrelation of ground water and surface water in the surrounding area, the hearing officer found that the proposed site could not tolerate any contamination. He held that the application should have included a quality control/quality assurance plan (QC/QA plan) and a leachate analysis in order to minimize the possibility of a failure of the liner system or of the contamination of the surrounding area. A QC/QA plan and a leachate analysis would presumably ensure that the facility would be constructed and would function as designed. The failure to include these items, the hearing officer ruled, precipitated Birchwood's failure to comply with Rule 9.14 of the solid-waste rules. Because its application contained neither a QC/QA plan or a leachate analysis, the plan was deemed to be deficient. The hearing officer therefore recommended that DEM deny Birchwood's application. He did recommend, however, that if at subsequent proceedings Birchwood was to present evidence of a QC/QA plan and a leachate analysis, the license should issue.

Before the acting director had issued the final decision, Birchwood filed a petition for mandamus in the Superior Court by which it sought to compel DEM to release the hearing officer's recommended decision. The Superior Court granted Birchwood's petition, but this court stayed that order. On December 27, 1989, the acting director issued the final decision whereby he denied Birchwood's application for a license to operate a landfill.

On January 4, 1990, Birchwood filed a motion for reconsideration/ modification/rehearing with the hearing officer. Whereby it offered to present evidence of a QC/QA plan and a leachate analysis. Because the hearing officer's authority had terminated on October 24, when he issued his recommended decision, Acting Director Grant considered the motion. On January 17 he denied Birchwood's motion. Birchwood then filed an appeal in the Superior Court pursuant to G.L.1956 (1988 Reenactment) § 42–35–15 of the Rhode Island Administrative Procedures Act.

Accordingly the Superior Court held a hearing in April 1992. At this hearing the question of whether the case should be remanded in order to allow Birchwood to offer additional evidence to remedy the deficiencies found by the hearing officer was discussed. After conducting an additional hearing, the Superior Court justice remanded the entire case to DEM for further hearings, at which Birchwood was to be allowed to present evidence of a QC/QA plan and a leachate analysis. The Superior Court also ordered that all parties would be permitted to litigate any other issues that they wanted to address in order to create as complete a record as possible. The proceedings on remand were not to be limited to the issues of the QC/QA plan and the leachate analysis.

During the course of the proceedings in Superior Court, DEM issued its "Notice of Proposed Amendments of Solid Waste Rules and Regulations and Public Hearing." In this notice DEM stated that it was proposing amending its rules to update requirements for landfills and incinerators and that these amendments included "[n]ew regulations for landfill baseliner systems, [and] leachate collection." The new regulations, as proposed, according to DEM, would not duplicate any existing regulatory rules or statutes. They included a requirement of a QC/QA report and the construction requirement of a geomembrane liner. Birchwood then filed a petition for a writ of certiorari that we granted. This rather complicated history brings us to the present action.

 As we begin our analysis of this case, we note the limited scope of our review. Birchwood filed, and we granted, a petition for writ of certiorari under G.L. 1956 (1988 Reenactment) § 42–35–16. Therefore, we may only examine the lower

court's decision for errors of law. We may not reevaluate any findings of fact. *Hometown Properties, Inc. v. Rhode Island Department of Environmental Management*, 592 A.2d 841, 843 (R.I.1991); *Berberian v. Department of Employment Security*, 414 A.2d 480, 482 (R.I.1980); *Providence Journal Co. v. Mason*, 116 R.I. 614, 620, 359 A.2d 682, 685 (1976). The standard of review is whether there exists any evidence, or whether any reasonable inferences can be drawn from the evidence that does exist, that would support the findings of the agency or the court whose decision is being reviewed. *Lemoine v. Department of Mental Health, Retardation, & Hospitals*, 113 R.I. 285, 288, 320 A.2d 611, 613 (1974). We conclude, on the basis of our review, that there was legal evidence to support the Superior Court's decision that this case did not present a *Newbay* type of problem.

Before we address Birchwood's main argument, it is necessary that we discuss its contention that the acting director did not have the authority to alter any of the findings of the hearing officer. In his final decision, the acting director specifically stated that he was deferring to the determination of the hearing officer regarding the weight to be afforded different evidence and the credibility of witnesses. However, he also said that upon his review of the record he found competent unrebutted testimonial evidence that was not cited by the hearing officer but that offered further support for his decision. Specifically, he found that in relying on the testimony of Joseph Fluet and Donald Grey, witnesses that the hearing officer had found to be most credible, the record contained additional support for the hearing officer's ruling that a QC/QA plan and a leachate analysis were necessary components of Birchwood's case. He also gave great weight to the testimony of the experts, particularly Philip Wagner, Philip Warner and Daniel Urish who testified that the flow of ground water from the proposed landfill site would not be impeded by natural barriers.

The acting director therefore concluded that the hearing officer was correct in finding that the lack of a QC/QA plan and a leachate analysis was fatal to Birchwood's case. He did, however, also find that these failures caused Birchwood to be out of compliance with various other solid-waste rules in addition to Rule 9.14. Birchwood now argues that the acting director was constrained by the findings of the hearing officer and that his failure to follow these findings exactly renders the agency's final decision null and void.

Under our recent decision in *Environmental Scientific Corp. v. Durfee*, 621 A.2d 200 (R.I.1993), that is not correct. In that case, which also dealt with a decision of DEM, we held that "[t]he agency director need not accept the Hearing Officer's findings if there is other, competent evidence in the record to support the agency's conclusion." *Id.* at 207. As Birchwood has noted in its reply brief, in *Environmental Scientific Corp.* we held that DEM'S final decision was not firmly rooted in sufficient evidence to warrant the director's straying from the findings of fact of the hearing officer. There the director had overruled the hearing officer's findings in regard to credibility, and as a result the final agency opinion was not supportable.

■ This is not the situation before us. Here the acting director accepted the hearing officer's determinations about credibility and also about most of his findings of fact. He did, however, conduct an additional review of the evidence and make several other findings of fact. In doing so, he relied on testimonial evidence presented by the witnesses that the hearing officer found to be most credible. He did not disregard the hearing officer's findings. Consequently we do not find that the agency's final decision was against the law and therefore null and void.

Birchwood's major argument on appeal is that DEM denied Birchwood's license application based on its alleged failure to comply with non-existent rules and that, as a result of the agency's reliance on non-existent rules, under this court's ruling in *Newbay Corp. v. Annarummo*, 587 A.2d 63 (R.I.1991), the Superior Court should have

ordered DEM to issue a license to Birchwood. Birchwood contends that DEM's denial of its license application for failure to submit a QC/QA plan and a leachate analysis was clear error. As a basis for this position, Birchwood argues that the applicable solid-waste rules that were promulgated on December 1, 1982 did not contain a specific requirement for either a QC/QA plan or a leachate analysis before a landfill license could be issued. Accordingly Birchwood maintains that the denial of its application on this basis was clear error and that a holding that such requirements were "implied" would be an unconstitutionally vague interpretation of the solid-waste rules. It concludes that the Superior Court was left with no alternative but to follow our ruling in *Newbay* and to order DEM to grant the license.

In the *Newbay* case DEM had denied the Newbay Corporation an air permit to operate a cogeneration facility. That denial was based upon Newbay's alleged failure to comply with a regulation that did not in fact exist. Newbay filed suit in Superior Court pursuant to § 42–35–7. That statute allows an interested party to contest the validity of an agency rule when the application of that rule threatens to impinge upon the applicant's legal rights. In its suit Newbay argued that because it had complied with all the requirements for the issuance of an air permit and the regulation with which it allegedly did not comply did not in fact exist, it was entitled to the automatic issuance of the air permit.

The Superior Court justice held in that case that the rule that DEM had applied to Newbay's application was indeed invalid. Because Newbay had complied with all valid rules and regulations, the court issued a writ of mandamus to DEM ordering it to grant an air permit to Newbay. On appeal this court upheld that decision. Because Newbay had fulfilled every valid requirement for the issuance of an air permit and the only action left was for the agency actually to issue the permit, a writ of mandamus to DEM directing it to issue the permit was the proper remedy.

 In this case Birchwood asks us to hold that because a QC/QA plan and a leachate analysis are not specifically required under the solid-waste rules, and because it has complied with all the other requirements for the issuance of a landfill license, the only permissible action for the Superior Court justice was to order DEM to issue it a license. We conclude, however, that this case is distinguishable from *Newbay* and that Birchwood's argument is without merit.

The acting director held that Birchwood's failure to provide a QC/QA plan and a leachate analysis, alone, was not fatal to its application. However, its failure to meet the burden established by G.L.1956 (1985 Reenactment) § 23–18.9–8 and Rules 9.04 it and 10.05 of the solid-waste rules justified DEM's refusal to grant it a landfill license.

Rule 9.04(a) provided that "the facility * * * shall not cause pollution of the waters of the United States so as to violate the Water Pollution Act, 1956 R.I.G.L., Chapter 46–12, as amended, or, Section 402 of the Clean Water Act, 33 U.S.C. 1251 *et seq.*"[1] Rule 9.14 mandated that landfills be operated in accordance with their approved operating and engineering plan. Finally, Rule 10.05(a)(1) provided in part that "[n]o sanitary landfill shall be operated so as to cause or to be likely to cause pollution of the ground waters or surface waters of the State at or beyond the boundary of the sanitary landfill." It is clear that the protection of ground and surface waters and the prevention of the off-site migration of contaminants are important goals of the solid-waste rules. The acting director, in his final decision, concluded as a matter of law, that Birchwood had failed to meet the requirements of Rules 9.04 and 10.05 and that, as a result, it was not in compliance with various other solid-waste rules.

The DEM maintains that although a QC/QA plan and a leachate analysis are not specifically required by the rules, in

---

**1.** The entire "Clean Water Act" is located at chapter 26 of 33 U.S.C. §§ 1251–1376 and is titled "Water Pollution Prevention and Control."

order to have proven that the landfill would be constructed and operated so as to comply with the rules, a QC/QA plan and a leachate analysis were necessary aspects of the design plan and application. In other words they were necessary for Birchwood to create a complete record.

The site for Birchwood's proposed landfill is undeniably extremely ecologically sensitive. The acting director found that "[t]here exist few natural barriers to the off-site migration of groundwater pollution from this site and the protection of the external environment, therefore, relies almost entirely on the ability of the landfill's leachate containment (liner) system to operate at the extremely high levels of efficiency testified to by the applicant's witnesses." Under § 23–18.9–8.1 the applicant bears the burden of proving that its proposed facility meets all relevant criteria "to protect the environment and which are reasonably required to dispose of wastes generated within this state."

A QC/QA plan is a comprehensive construction and operation program that ensures that landfill will be constructed and operated in accordance with its design plan. By providing continuity, especially in a situation such as this wherein the liner is to be constructed in many segments, the QC/QA plan helps to ensure that the landfills meet planned efficiency levels. Because Birchwood has failed to supply such a plan, it has failed to demonstrate that the facility will be built and operated as proposed. Therefore, it has not met its burden of proving that there will be no off-site ground-water or surface-water pollution.

The failure to provide a leachate analysis is also not, in and of itself a violation of the solid-waste rules. However, because of this failure, Birchwood has not met its burden of proving that its design will prevent the off-site migration of contaminants and will not pollute the surrounding surface water and ground water. Leachate is the liquid that results when liquids that are introduced into a landfill (for example, liquid waste, snow, or rain), percolate down through the solid waste. A leachate analysis would determine what the likely compo-

nents of the leachate in this particular landfill would be. The makeup of this leachate is determinative of how effectively the proposed liner system will function as a barrier to the off-site migration of leachate into the surrounding ground water and surface water.

Birchwood's proposed facility calls for a dual liner system. One of the liners would be constructed of a high-density polyethylene (HDPE) plastic. There was expert testimony that this material normally has a low permeability and that most substances will not easily pass through it. However, DEM's expert testified that this low permeability can be jeopardized by the introduction of certain substances into the landfill. For example, benzene passes through an HDPE plastic liner. It is impossible to determine how effectively the liner system will operate without knowing the makeup of the leachate.

There was also expert testimony during DEM's hearings that some leachate constituents actively damage HDPE plastic liners and that such damage would cause a lowering of the efficiency of the liner system. Therefore, the leachate analysis, although not specifically required by the rules, is a necessary element of the evidence required to substantiate Birchwood's claim that the liner would function adequately to protect the surrounding environment. The rules require an applicant to demonstrate its ability to protect the environment. Although a "QC/QA plan" and a "leachate analysis" are not verbatim requirements of the solid-waste rules, it is reasonable for DEM to require that those issues be addressed in this case. Here they were both relevant and necessary aspects of Birchwood's case that Birchwood failed to include.

For these reasons we find that the Superior Court had sufficient evidence before it to find that the present case did not present a *Newbay* type of problem. The DEM acting director did not deny Birchwood's license because of the failure to provide a QC/QA plan and a leachate analysis but because of its failure to meet its burden to prove that the proposed facility would comply with the solid-waste rules. If Birch-

wood could find another method other than a QC/QA plan and a leachate analysis to satisfy its burden under the solid-waste rules, as they existed at the time, such method might suffice. They have not yet done so.

■ Having determined that the Superior Court justice was correct in finding that this case did not present a *Newbay* issue, we next analyze the propriety of his remand. On May 8, 1992, the Superior Court justice remanded this case to DEM for further hearings at which Birchwood was to be permitted to

"present additional evidence as to (1) a written Quality Control/Quality Assurance plan to demonstrate that the facility can be operated in conformity with engineering plans, and (2) evidence as to the chemical constituency of the leachate reasonably expected to be produced by the facility and to demonstrate that chemicals incompatible with the HDPE liner will not be introduced into this system."

Additionally the Superior Court justice ordered that all parties would be permitted to litigate any issue they chose and were not to be limited to QC/QA-plan and leachate analysis issues.

■ When the Superior Court reviews an agency decision, the court may affirm or reverse the decision or may remand the case for further proceedings. Section 42–35–15(g). It is clear that the Superior Court justice has some discretion in fashioning a remedy when hearing an appeal from an agency decision. The court may remand the case to the agency for the presentation of additional evidence. We have previously held that the Superior Court's power to order a remand under § 42–35–15(g) is "merely declaratory of the inherent power of the court to remand, in a proper case, to correct deficiencies in the record and thus afford the litigants a meaningful review." *Lemoine*, 113 R.I. at 290, 320 A.2d at 614.

In this case, however, the Superior Court's order of remand was simply too broad. It was Birchwood's failure to establish, on the administrative level, the efficacy of its proposed liner system and to ensure the protection of the surrounding ground water and surface water that caused the denial of its license. The Superior Court should have remanded the case to DEM for the presentation of evidence on the issues of a QC/QA plan and a leachate analysis for the purpose of allowing Birchwood to meet its burden of proof as that burden is established by the solid-waste rules. Although the hearing officer found that Birchwood's application was lacking only to the extent that it failed to include a QC/QA plan and a leachate analysis, the Acting Director made additional findings in his final decision. Most importantly, he found that Birchwood had not proved that the proposed landfill site is hydrologically isolated from the Richmond elementary school's wells. Insofar as this factor has some bearing on Birchwood's ability to meet its burden of proof under the rules, it can include such evidence in its presentation upon remand. It may very well be that such evidence is not necessary for it to meet its burden. We now hold, therefore, that the Superior Court should have remanded the case to DEM for the sole purpose of allowing Birchwood to present evidence on these issues.

■ Birchwood has also argued on appeal that it was not given adequate notice that it was not in compliance with Rule 9.14 of the solid-waste rules. This argument is also without merit. Birchwood has focused their argument on the fact that the hearing officer found its application to be deficient because of a failure to comply with Rule 9.14 and to provide a QC/QA plan and a leachate analysis. The decision of the hearing officer is not the final agency decision, it is the final decision of the acting director that constitutes the final agency action. On May 24, 1988, DEM provided a list of no less than twenty rules with which it alleged that Birchwood had failed to comply. It is true that this list did not include Rule 9.14 or a QC/QA plan or a leachate analysis. The list did, however, include Rule 9.04 and Rule 10.05, the rules that the acting director cited in his final decision. The acting director then found that the failure to comply with these rules caused

Birchwood to fail in its burden of proof as that burden is contemplated by other solid-waste rules. Additionally, as we noted above, Birchwood's failure to provide a QC/QA plan and a leachate analysis was not in and of itself a violation of the rules but caused Birchwood's failure to meet its burden of proof. Accordingly, we find that no notice deficiency existed in the case before us.

■ Finally, Birchwood has argued that DEM's granting of a license to the town of Richmond to expand its landfill is evidence that the denial of Birchwood's license was violative of equal protection. On April 16, 1986, Richmond did receive DEM approval for the expansion of their landfill that is located next to Birchwood's proposed site. This municipal landfill did not have a liner system and the town's application did not contain a QC/QA plan and a leachate analysis. Apparently Birchwood would like this court to find that DEM's renewal of Richmond's license and the allowance of an expansion of that facility establish that DEM's denial of its license was a violation of equal protection. We are not persuaded by that argument. Richmond's public landfill was licensed prior to the enactment of the 1982 Solid Waste Rules. Those rules did not apply to Richmond's landfill. There is also a major difference between licensing a 6–acre expansion of an existing facility and licensing the 60–plus–acre facility that Birchwood is proposing. For these reasons a comparison of the two is not justified. The DEM's licensing of an expansion of Richmond's landfill does not establish that Birchwood has been denied equal protection.

For all these reasons the petition for certiorari is denied in part and granted in part. The order of the Superior Court is quashed. The papers of the case are remanded to the Superior Court with our decision endorsed thereon and for entry of a new order consistent with this opinion.

LEDERBERG, J., did not participate.