DECISION
Plaintiff Cynthia Richter appeals from a decision of a hearing officer of the Rhode Island Department of Human Services ("DHS") that denied her application for medical assistance benefits. She seeks reversal of that administrative decision on the grounds that the hearing officer did not give appropriate consideration to her treating physician's opinions, failed to conduct a de novo review of her case, and failed to make adequate findings of fact. The DHS counters that the decision should be upheld because the finding that plaintiff Richter was not disabled is supported by the record and made pursuant to the applicable legal standards. For the reasons set forth in this Decision, this Court affirms the decision of the DHS hearing officer.
 Facts and Travel
Plaintiff Richter, a 43 year old woman, was admitted to Rhode Island Hospital on May 28, 2005 after a fall fractured her right leg and ankle,[1] resulting in nerve damage. The injury required two separate surgeries over the course of a week and the affixation of permanent hardware, comprised of four plates and twelve screws. Her leg was placed in a cast, and she was prescribed Percocet and Oxycontin for pain. She was discharged with instructions to remain *Page 2 
non-weight bearing on her right leg. She also was assigned follow-up physical therapy at the Rhode Island Hospital Orthopedic Clinic. Before this injury, she worked as a self-employed commercial cleaner and also had worked as a waitress in the past.
Plaintiff Richter filed an application for medical assistance benefits on July 1, 2005. As part of her application, she submitted records extending through July 5, 2005, including an AP-70 Information for Determination of Disability form ("AP-70"), an MA-63 Physician Examination Report for Determination of Disability form ("MA-63"), Newport Hospital records, and Rhode Island Hospital records.
In the AP-70 form, date stamped July 1, 2005, plaintiff Richter describes her injury as preventing her from working, writing: "Broken ankle/2 surgery [sic]; spasms, sharp shooting pain, can't sleep because of it under cast irritates incisions skin — stitches. I feel incisions hardware. Doctors orders to stay off right foot for three months — absolutely no weight bearing on foot/ankle. Foot must remain elevated." (AP-70, July 1, 2005, Ex. 8 at 1.) She also indicated that she needed to use a walker, a wheelchair, or crutches to get around. (Id. at 3.)
Plaintiff's treating physician, Dr. Krasinsky of the Rhode Island Hospital Orthopedic Clinic, completed the MA-63 Physician's Examination Report, answering "Yes" to the question of whether the impairment was expected to last 12 months, but indicating in the space next to the question, "Possibly last 12 mo. — not death[.]" (MA-63, July 8, 2005, Ex. 7 at 1) (emphasis in original.) He further noted on the next page that the condition was expected to last "6-12 mo." (Id. at 2.) Dr. Krasinsky found plaintiff Richter's prognosis to be "non-weight bearing immobilized for few months and then require rehab," meriting "close follow-up." (Id.) At the time of his review, he limited plaintiff to one hour of walking with crutches and 2-4 hours of sitting in an eight hour day; however she could not stand, reach, or bend. (Id. at 3.) He went on *Page 3 
to prohibit plaintiff from lifting up to ten pounds or carrying up to five pounds and rated her ability to work at a consistent pace and respond to changes in work routine or environment as "markedly limited." (Id.)
The medical records from Newport Hospital consisted of plaintiff Richter's discharge summary as well as a patient progress note. (Authorization for Disclosure/Use of Health Information Form, DHS25M, July 1, 2005 Ex. 9.) Her discharge summary instructs that she should remain non-weight bearing on her right leg and that she should ice and elevate the leg. (Newport Hospital Discharge Summary, June 17, 2005, Ex. 9.) They also indicate that she was prescribed Percocet, Colace, Oxycontin, and Valium. Id. The Rhode Island Hospital records consisted of a discharge summary describing her surgeries. (RIH Discharge Summary, June 26, 2005, Ex. 9 at 1.) The discharge summary lists her condition as "stable and improved" and indicates no complications. (Id.) It also states that "she is to limit heavy lifting and strenuous activity." (Id.) Orthopedic notes from plaintiff's first post-operative visit also were included in the Rhode Island Hospital records. They indicate that plaintiff had fallen while in her splint, resulting in a trip to Newport Hospital to have X-rays taken. (RIH Orthopedic notes, July 5, 2005, Ex. 9.) She was told that her ankle "looked fine," although she did complain of increased swelling and pain. (Id.)
After reviewing her application, the Medical Assistance Review Team ("MART") sent plaintiff Richter a written denial of medical assistance on September 9, 2005, finding her "not aged sixty-five (65) or older, blind, or disabled." (Denial Letter, Sept. 9, 2005, Ex. 3.) Plaintiff Richter timely filed an administrative appeal from that decision on September 13, 2005.
A DHS hearing officer held a hearing on November 1, 2005 with respect to her appeal, at which plaintiff testified. At the hearing, the MART representative stated that in reaching its *Page 4 
decision, the MART had relied on the same records that plaintiff had submitted previously with her application for medical assistance benefits, namely the AP-70 form, the MA-63 form, the Newport Hospital records, the Rhode Island Hospital records and also East Bay Community Action records. (Hr'g. Tr. of Nov. 1, 2005, Ex. 12, at 2-3.) The hearing revealed that the East Bay Community Action records were those of someone other than plaintiff Richter and had been erroneously included in the MART file. (Tr., Ex. 12 at 3-4.) The MART subsequently deleted these records from the file. (E-mail from Julie Hopkins, MART nurse, to Laurie DiOrio, Hearing Officer, Dec. 6, 2005, Ex. 10.)
At the hearing, plaintiff Richter described the nerve damage to her foot:
 It's like deep numbing. Like, not like a pins and needles but when you press it, I know you're pressing it but I don't feel it. I mean, it hurts, ok? Um, the pain, to be honest, is not as bad as it was. Um, me and any drugs, we just don't mix so I try, especially if I have to go out the next day, I try not to take my pain medication the night before. Um, and most of the pain is especially in physical therapy. They've also found that I have a situation with the bottom of my foot, um, where when you put it down to walk on it, it actually feels like I'm stepping on glass. Not all, not every, not every single section.
(Tr., Ex. 12 at 8-9.) She further explained that when her physician removed her cast in July, "what happened was the toes were still pointed in and the doctor, actually one of the surgeons, Dr. Koe [sic] that did my surgery, who said `Oh, that doesn't look right.' So he went down and brought up the head of orthopedics for (inaudible) and that's when they discovered I have nerve damage." (Tr., Ex. 12 at 8.) She attributes her reduced range of motion to the nerve damage, putting it at "twenty-seven percent movement out of a hundred." (Tr., Ex. 12 at 7.)
During the hearing, the hearing officer explained to plaintiff Richter that she submit additional medical records to supplement those records that she had already submitted to allow DHS to "get a better picture" of how she was doing. (Tr., Ex. 12 at 26.) The record remained *Page 5 
open through November 29, 2005, and plaintiff Richter submitted additional records. (Hr'g Dec'n dated Jan. 3, 2006, Ex. 11 at 3.)
Among these additional records were follow-up reports of Dr. Koh and Dr. Fitzgibbons from the Rhode Island Hospital Orthopedic Clinic. In the first examination of plaintiff Richter on August 2, 2005, Dr. Koh notes that "It looks like her common peroneal nerve is out. It was discussed with her that would take up to two years to recover. She was in some equinus. She could not get her ankle beyond neutral on passive range of motion." (Dr. Koh Rep., Aug. 2, 2005, Ex. 9.)[2] Dr. Fitzgibbons conducted plaintiff's next post-operative examination and found that her incisions were "well healed, clean, dry and intact." (Fitzgibbons Rep., Aug. 12, 2005, Ex. 9.) Later that month, plaintiff Richter was able to forego the cast and use a Cam walker, with "partial weight bearing with 30 pounds of weight," and was prescribed physical therapy. (Dr. Koh Rep., Aug. 25, 2005, Ex. 9.) In September 2005, Dr. Koh diagnosed plaintiff Richter with "peroneal nerve palsy."[3] (Dr. Koh Rep., Sept. 20, 2005, Ex. 9.)
Plaintiff Richter also submitted physical therapy records from Vanderbilt Rehabilitation Center. These records indicate that she was given short term goals[4] with a four week timeframe and long term goals of walking independently and climbing stairs. (Vanderbilt Initial Eval., Sept. 14, 2005, Ex. 9 at 3.) As of October 11, 2005, nearly four weeks after the first evaluation, the short term goals were only "improved or partially met," and the long term goals had not been met. (Vanderbilt Re-eval., Oct. 11, 2005, Ex. 9.) *Page 6 
Notes from her physical therapy sessions indicate the varying nature of her pain. On September 15, 2005, for example, the notes indicate that she was "only able to tolerate very light touch due to reports of very tender." (Vanderbilt PT notes, Sept. 15, 2005, Ex. 9.) On September 22, 2005, she was "able to tolerate moderate pressure at medial lateral malliolii;" however, on September 29, 2005, she refused manual therapy altogether "due to pain." (Vanderbilt PT notes, Sep. 22, 2005, Ex. 9; Vanderbilt PT notes, Sept. 29, 2005, Ex. 9.) In an effort to decrease sensitivity, she was instructed to desensitize with sand and rough surfaces. (Vanderbilt PT notes, Oct. 6, 2005, Ex. 9.)
The physical therapy notes also show improvement. Plaintiff Richter began bearing weight on her injured leg at the prescribed 30 pounds. (Dr. Koh Rep., Aug. 25, 2005, Ex. 9.) On September 20, 2005, Dr. Koh recommended that she begin increasing this weight by ten pounds per week. (Vanderbilt Physician Order, Sept. 27, 2005, Ex. 9.) She gradually progressed, with the notes on October 19, 2005 indicating that she was able to put 80 pounds on her right leg and was demonstrating correct weight bearing status, and the notes on November 8, 2005 stating "weight bearing to 110# this week." (Vanderbilt PT notes, Oct. 19, 2005, Ex. 9; Vanderbilt PT notes, Nov. 8, 2005, Ex. 9.)
When the hearing officer closed the record on November 29, 2005, the additional records received from plaintiff Richter after the hearing and the testimony at the hearing were reviewed by the MART, and it indicated that its initial decision remained unchanged. (Hopkins E-mail, Ex. 10.) In the E-mail, the MART erroneously cited the follow-up physical therapy evaluation dated October 11, 2005 for the proposition that plaintiff already had met all of her short term goals. (Id.) The MART correctly noted, however, that she had not yet met her long term goals. (Id.) The MART further stated that "it can be expected that she will continue to improve." (Id.) *Page 7 
On January 3, 2006, the hearing officer issued a decision denying her application for medical assistance benefits.[5] The hearing officer found that plaintiff Richter satisfied the requirements of step one of the sequential evaluation process, namely, that she was not engaged at the time of the hearing in substantial gainful activity. (Hr'g Dec'n, Ex. 11 at 3.) Under step two of the evaluation process, the hearing officer looked at two factors: whether the injury was severe, and whether it was expected to last 12 months. After noting that "there is no evidence that might suggest that the appellant won't expect a full recovery within 12 months from the point of onset," the hearing officer determined that "the appellant does certainly have a condition that is now severe, but should not be so at 12 months post onset." (Id. at 4.) She explained that after a review of all of the records presented to her, "the evidence in this matter does not effectively demonstrate the presence of a severe impairment." (Id.) Although the hearing officer couched the decision in terms that could imply a finding that plaintiff should be expected to recover within 12 months, the hearing officer's ultimate conclusion was that plaintiff Richter did not meet her burden of proving that she fulfilled the duration requirement in step two of the five-step sequential evaluation process (namely that her impairment could be expected to last for at least 12 months).
Plaintiff Richter filed a timely appeal from that decision to this Court. She seeks reversal on the grounds that the hearing officer did not give appropriate consideration to Dr. Krasinsky's opinion in the MA-63 form, failed to conduct a de novo review by improperly deferring to the MART's decision, and failed to make adequate findings of fact by not stating her reasons for *Page 8 
disregarding the opinion of Dr. Krasinsky. The DHS counters that the decision should be upheld because the finding that plaintiff Richter was not disabled was supported by the evidence of record and made pursuant to the applicable legal standards.
 Standard of Review
This Court's review of an administrative decision is guided by the provisions of R.I. Gen. Laws 1956 § 42-35-15(g), as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Center for Behavioral Health v.Barros, 710 A.2d 680, 684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Newport Shipyard Inc. v. R.I. Comm'n for Human Rights, 673 A.2d 457, 459
(R.I. 1996). This Court may not substitute its judgment for that of the agency on issues of fact or with regard to the credibility of witnesses where substantial evidence exists to support the agency's findings.See Mercantum Farm Corp. v. Dutra, 572 A.2d 286, 288 (R.I. 1990);Barros, 710 A.2d at 684; Baker v. Dep't of Employment and Training Bd.of Review, 637 A.2d 360, *Page 9 366 R.I. 1994). Only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record" may this Court reverse. Baker, 637 A.2d at 363 (quoting Milardo v.Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). Questions of law are not binding upon the court and are reviewed de novo.Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (R.I. 1977); Bunch v. Bd. of Review, R.I. Dep't of Empl. Training,690 A.2d 335, 337 (R.I. 1997). The Court may review conclusions of law and invalidate findings of fact that are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."Slessinger v. Sec'y of Health Human Servs., 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (citing Thompson v. Harris, 504 F.Supp. 653, 654
(D. Mass. 1980)); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). It is inherent in the power of this Court to order a remand to the administrative agency to "correct deficiencies in the record and thus afford the litigants a meaningful review."Birchwood Realty, Inc. v. Grant, 627 A.2d 827, 834 (R.I. 1993) (quotingLemoine v. Dep't of Mental Health, Retardation, and Hospitals,320 A.2d 611, 614 (R.I. 1974)).
 Standards for Determining Eligibility for MedicalAssistance
The medical assistance program is a product of the federal Social Security Act and is administered by the federal government.See 42 U.S.C. § 1396 et seq. The DHS manages the program on a statewide level in Rhode Island and, in so doing, is bound by the guidelines established by the federal government. Id.; Tierney v. Dep't of HumanServices, 793 A.2d 210, 211 (R.I. 2002). Under federal law, "an individual shall be considered to be disabled . . . if he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which *Page 10 
has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3).
To determine whether a particular individual is disabled, the DHS is required to employ the five-step sequential evaluation method set forth in the federal regulations. See 20 C.F.R. § 416.920. The questions asked pursuant to these regulations are as follows:
 1. Is the claimant engaged in substantial gainful activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920(a)(4)(i)-(v).
Under the second step, the impairment must be severe and must fulfill the duration requirement of 20 C.F.R. § 416.909. See20 C.F.R. § 416.920(a)(4)(ii). This duration requirement, as embodied in20 C.F.R. § 416.909, reads: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."
The claimant bears the burden of establishing a prima facie case of disability. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). This burden requires the claimant to make out a case both that she has an impairment listed in the regulations and that she has met the duration requirement. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995) (citing 20 C.F.R. § 416.920(d)). "A negative answer to any question, other than step three, leads to a determination of `not disabled.'" McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986);see also *Page 11 Barnhart v. Thomas, 540 U.S. 20, 24 (2003) ("If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further.")
 Analysis The Duration Requirement
The primary issue on appeal is whether the hearing officer erred in determining that plaintiff Richter failed to present sufficient medical evidence to prove that her disability would last at least 12 months. Plaintiff suggests that the hearing officer improperly disregarded the opinions of Dr. Kransinsky as to the expected duration of her disability and failed to explicate the reasons for rejecting this medical evidence. DHS, in contrast, relies on the opinions of Dr. Krasinsky to defend the hearing officer's decision.
As the treating physician, Dr. Krasinsky qualifies as an acceptable medical source under 20 C.F.R. § 416.913(a)(1). The value of his opinion, therefore, is to be determined in accordance with20 C.F.R. § 416.927. This provision provides that Dr. Krasinsky's opinion is to be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. 20 C.F.R. § 416.927(d)(2). In plaintiff's brief, she acknowledges that Dr. Krasinky's opinion "is the only `acceptable medical source' opinion on the issue." If it were Dr. Krasinsky's opinion, to a reasonable degree of medical certainty, that the injury is expected to last at least 12 months, then plaintiff has carried her burden of proving the duration of the injury, provided that the opinion is not inconsistent with other substantial evidence. If his opinion does not indicate, to a reasonable degree of medical certainty, that the injury is expected to last 12 months, then she has failed to carry her burden of proving the duration requirement. *Page 12 
In characterizing the opinion of Dr. Krasinsky, plaintiff Richter focuses on the fact that Dr. Krasinsky checked a box on the MA-63 form indicating "yes" in response to the question of whether her impairment was expected to last 12 months and that he wrote on the next page that the condition was expected to last "6-12 mo." DHS counters with the evidence that Dr. Krasinsky wrote the words "possibly last 12 mo." next to the checked box on the MA-63 form, claiming that the physician failed to opine that plaintiff's impairment is expected to last at least 12 months.
To satisfy the duration requirement in 20 C.F.R. § 416.909, the injury "must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. For the injury to be "expected to last" the required amount of time, it has to be medically probable, or more likely than not, that the injury will last at least 12 months.Riley v. Stone, 900 A.2d 1087, 1092 (R.I. 2006) (Medical "opinions offered [must] rise to the level of reasonable medical certainty, that is, some degree of positiveness or probability and not possibility.") InSuffoletta v. Ricci Drain Laying Co., the Rhode Island Supreme Court found that a portion of a physician's testimony that spoke in terms of possibilities and not probabilities was "speculative and conjectural, and therefore of no legal effect on the issue of the employee's work capabilities." 319 A.2d 19, 21 (R.I. 1974).
Here, while Dr. Krasinsky checked "yes" in response to the question of whether plaintiff Richter's impairment was expected to last 12 months, he qualified that answer by writing "possibly last 12 mo." in the area next to that question. He further qualified his opinion by writing "6-12 mo." on the opposite side of the MA-63 form, defining the expected duration of the impairment as at most 12 months. As such, Dr. Krasinsky's opinion does not contain the *Page 13 
requisite degree of positiveness as to the probability that plaintiff Richter's impairment will last at least 12 months.
Indeed, this Court's review of the evidence of record indicates that it contains no medical opinion evidence suggesting, to a reasonable degree of medical certainty, that it is probable, or more likely than not, that plaintiff Richter's impairment will last for at least 12 months. At most, the evidence merely suggests that possibility. While the hearing officer did not explicitly comment on the failings of Dr. Krasinsky's opinion, or the evidence in general in this regard, she did conclude that "there is no evidence to suggest that the [plaintiff] won't expect a full recovery within 12 months from the point of onset." (Hr'g Dec'n, Ex. 11 at 4). The hearing officer's decision in this regard is thus supported by the substantial evidence of record. Plaintiff Richter simply failed to meet her burden of proving, through competent medical evidence, that her impairment met the duration requirement of federal law.[6]
 The East Bay Community Action Records
To the extent that the MART team may have relied improperly upon incorrect medical records in its initial evaluation, this error was corrected at the beginning of the administrative hearing and before the hearing officer made any decision. The hearing officer took time to clarify, on the record, which records applied to plaintiff Richter. (Tr., Ex. 12 at 3-4.) Further, the records were removed later from the file. (Hopkins E-mail, Ex. 10.) After the MART re- *Page 14 
evaluated the medical records, without the East Bay Community Action records included, its analysis remained the same. (Id.) To the extent, therefore, that the East Bay Community Action records were included mistakenly in the record, such error was harmless, as there is no indication that they weighed in the decision of the hearing officer.
 De Novo Review
Plaintiff Richter suggests further that she was not accorded thede novo review to which she was entitled under the provisions of 42 C.F.R. § 431.232-244. In support of this contention, she notes that during the hearing, the hearing officer stated that if plaintiff gave certain records to the review team, "they'd be happy . . . and they can find that you meet the criteria they'd be happy to reverse their decision." (Tr., Ex. 12 at 25.) She accords significance to this statement, asserting that it demonstrates a willingness of the hearing officer to defer to any determination that the MART has reached, thus abrogating her responsibility to accord a de novo review. She claims further that the hearing officer issued findings that can only come from the MART, without specifying any findings encompassed by this claim. DHS counters that in many cases, after a review of additional records, the MART reverses its original decision, rendering a further decision by the hearing officer unnecessary.
The record does not reveal the lack of a de novo hearing. While the hearing officer did make the above statement, her decision reveals that she reviewed the AP-70 form, the MA-63 form, and the medical records from Rhode Island Hospital and Newport Hospital. (Decision, Ex. 11, at 3.) After reviewing these records, as well as the records submitted after the hearing, she appropriately cited the lack of evidence indicating that plaintiff's injury would last at least 12 months and on that basis concluded that plaintiff Richter was not disabled. (Hr'g Dec'n, Ex. at 4.) *Page 15 
 Conclusion
After review of the entire record, this Court finds that the hearing officer's decision below is supported by substantial evidence; plaintiff Richter simply failed to prove the duration of her injury. Further, the inclusion of the East Bay Community Action records constituted harmless error and the hearing officer properly accorded plaintiff Richter ade novo hearing. Accordingly, the decision of the hearing officer is affirmed.[7]
[1] Specifically, plaintiff Richter sustained a fractured right fibula and a pilon fracture of the right tibia. (Physician Examination Report for Determination of Disability, MA-63, Ex. 7 at 1).
[2] While Dr. Koh noted a recovery time of up to two years, there is no suggestion by plaintiff that this injury is one that could constitute a severe impairment sufficient to render plaintiff disabled for purposes of her application for medical assistance benefits. Moreover, Dr. Koh's report does not state to a reasonable degree of medical probability that this injury will last at least 12 months.
[3] The PDR Medical Dictionary defines "palsy" as "paralysis or paresis." PDR Medical Dictionary 1285 (1st ed. 1995.)
[4] The parties have not specified, and the record is insufficiently legible for the Court to determine, the nature of these short term goals.
[5] The hearing officer made the following findings of fact: "(1) The appellant filed an application for Medical Assistance (MA) on July 1, 2005. (2) The agency issued a written notice of denial of MA dated September 9, 2005. (3) The appellant filed a timely request for a hearing received by the agency on September 13, 2005. (4) The appellant held the record open a total of 28 days, through November 29, 2005. (5) The MART reviewed all evidence received while the record was open and remained unmoved in their finding. (6) The appellant is neither aged nor blind. (7) The appellant is not disabled." (Hr'g Dec'n, Ex. 11 at 4.)
[6] Plaintiff Richter reads the hearing officer's decision, particularly the conclusion that "the [plaintiff] does certainly have a condition that is now severe, but should not be so at 12 months postonset," to indicate that the hearing officer improperly relied upon the determination by MART that plaintiff would improve. (Hr'g Dec'n, Ex. 11 at 4.) She argues that this finding of the hearing officer is not supported by the medical record. When read in the context of the entire decision, however, this Court reads this finding of the hearing officer to mean that plaintiff has not presented sufficient evidence to conclude that her disability would last for more than 12 months. This context is provided by the sentence immediately preceding the one on which plaintiff's argument rests which reads: "there is no evidence to suggest that the [plaintiff] won't expect a full recovery within 12 months from the point of onset." Id. Thus, the finding of the hearing officer that plaintiff's condition should not be severe at 12 months post onset, if read in isolation, may be erroneous and not supported by the medical record, as plaintiff suggests. Yet that finding does not change the hearing officer's ultimate conclusion, as affirmed by this Court, that there is an absence of competent medical evidence in the record to prove the duration of plaintiff's impairment.
[7] The Court notes that, in light of the time that has passed since plaintiff Richter filed her application for medical assistance benefits, if she believes that she now can prove a severe impairment of at least 12 months duration, she is free to file a new claim. See Roberts v.Shalala, 66 F.3d 179 (9th Cir. 1995) (inviting the plaintiff to reapply for social security benefits). This Court "simply cannot look beyond the record as it existed before the [hearing officer] when [she] rendered [her] decision." Id. at 183 n. 3.