DECISION
Before the Court is the Appeal of Makanjuola "Mak" Falaye ("Petitioner" or "Mr. Falaye") seeking review of a decision by the Department of Labor and Training ("DLT"). In that Decision, Petitioner is ordered to pay back wages to three former employees of the Cumberland Hill Laundromat. For the reasons stated herein, the decision and order of the DLT are vacated, and the matter is remanded to the DLT for further proceedings. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
This appeal arises out of claims for unpaid wages made by several former employees of the Cumberland Hill Laundromat ("the Laundromat"), located on Mendon Road in Cumberland, Rhode Island. On April 19, 2006, the DLT held a hearing on six consolidated claims. Petitioner, against whom those claims were brought, did not appear *Page 2 
at the hearing despite having received extensive notice.[1] Three of the above-captioned complaining employees — Lisa Daley, Cathleen LaPlante, and Ivonne Otero — also did not appear despite receiving notice; their claims were dismissed and are not before this Court. A written Decision was subsequently issued awarding earned but unpaid wages to each of the three remaining claimants: Melissa-Ann Machado, Joann Monroe, and Donna Jean Patenaude. In that decision, the presiding DLT representative identified Petitioner as the owner and manager of the Laundromat. The hearing officer further found that uncontradicted evidence established that the three remaining claimants were hired by Mr. Falaye, who thereafter "willfully refused to pay the claimants in accord with Rhode Island Law." (Decision 1.)
With respect to the claim of Ms. Patenaude, the hearing officer found that she had been hired in August 2004 at an hourly wage of $6.75. She was not paid, however, for one day of work during the week of February 12-18, 2005, nor for her final, part-week of work from April 30-May 4, 2005. The officer therefore found that Mr. Falaye owed Ms. Patenaude $217.00 for earned but unpaid wages. With respect to the claim of Ms. Monroe, the officer found that she was hired as a manager to be paid $9.00 an hour and commenced work on January 21, 2005. She worked for 7 hours on that day, for which she was due $63.00; 39 hours the following week, for which she was due $351.00; and 29.5 hours through February 4, earning $265.50 that week. The hearing officer found that Ms. Monroe was owed $479.50 for earned but unpaid wages.[2] *Page 3 
The hearing officer found the claim of Ms. Machado to be "the most significant one, both in dollar amount and degree of misconduct of Mr. Falaye." (Decision 2.) The officer found that Ms. Machado was a Laundromat employee from February 26, 2005 until August 27, 2005, and was to be paid a wage of $6.75 per hour. In all but two of the weeks for which Ms. Machado presented pay stubs, she had worked in excess of 40 hours, but was only paid her regular rate for those overtime hours. Relying on those pay stubs, the hearing officer calculated the wages owed her to meet the mandatory time-and-a-half pay for overtime. The officer noted that his calculation was conservative because it did not include two weeks for which Ms. Machado had no stubs, and also did not include any double-pay for Sundays that Ms. Machado presumably worked but could not document. Additionally, the officer found that Ms. Machado was not paid at all for her final three weeks at the Laundromat, during which she worked at least 80 hours per week. Finally, the officer found that Mr. Falaye improperly docked Ms. Machado $150 of pay, in violation of G.L. 1956 § 28-14-24, for alleged property damage caused by her son. In sum, the officer found that Ms. Machado was owed $4,328.82. In addition to the respective amounts owed each claimant, Mr. Falaye was ordered to pay a 25% assessment of the wages owed, totaling $1,256.73, to the DLT as is authorized in G.L. § 28-4-19. Finally, the hearing officer recommended the matter be referred to the Attorney General for further civil or criminal proceedings pursuant to G.L. § 28-14-22.
It is from that order of the DLT that Petitioner appeals. He asserts that he is not a proper party in this matter, and that the Laundromat is in fact owned and operated by Frontiers, LLC, of which he is a member. (Complaint ¶¶ 1-2.) In support of this contention, Petitioner has attached to his Complaint a "Bill of Sale," executed and signed *Page 4 
by one George Blacksmith on May 1, 2004. (Complaint, Ex. A.) That bill purports to sell to "Frontiers, LLC, a Rhode Island duly organized limited liability company," all assets of "Mendon Road Laundremat [sic]," located at 3400 Mendon Road.
 Standard of Review
The Rhode Island Administrative Procedures Act sets forth the standard for this Court's review of an administrative agency decision such as the one appealed here. General Laws 1956 § 42-35-15(g) provides:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The review provided by § 42-35-15 "is circumscribed and limited to `an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision.'"Nickerson v. Reitsma, 853 A.2d 1202, 1205 (R.I. 2004) (quotingBarrington School Committee v. Rhode Island State Labor RelationsBoard, 608 A.2d 1126, 1138 (R.I. 1992)). This Court will not substitute its own judgment for that of the agency on questions of fact, even where conclusions different from those drawn by the agency appear warranted.Johnston Ambulatory Surgical Ass'n, Inc. v. Nolan, 755 A.2d 799, 805
(R.I. 2000). Reversal of an agency's factual findings are appropriate only where "they are totally devoid of competent evidentiary support in the record." Baker v. *Page 5 Dept. of Employment Training Bd. of Review, 637 A.2d 360, 363 (R.I. 1994). In contrast to the deference given to its factual determinations, an agency's conclusions on questions of law are subject to the de novo review of this Court. Arnold v. Dept. of Labor and Training Board ofReview, 822 A.2d 164, 167 (R.I. 2003). If an agency decision has no basis in evidence or is affected by error of law, § 42-35-14(g) allows this Court discretion to fashion an appropriate remedy, including reversal or remand. Birchwood Realty v. Grant, 627 A.2d 827, 834 (R.I. 1993). "[T]he Superior Court's power to order a remand under §42-35-15(g) is `merely declaratory of the inherent power of the court to remand, in a proper case, to correct deficiencies in the record and thus afford the litigants a meaningful review.'" Id. (quoting Lemoine v.Department of Mental Health, Retardation, Hospitals, 113 R.I. 285,290, 320 A.2d 611, 614 (1974)).
 Law and Analysis
Waiver
The DLT first argues that by failing to appear for the scheduled hearing, after receiving extensive notice of the matter, Petitioner waived the defense based on the LLC ownership of the Laundromat. Although the record does not contain copies of notices sent to Petitioner, or certification of their mailing as it does with the Decision, the DLT states that copies of each of the six complaints, and then six separate notices of the consolidated hearing on those complaints, were mailed to Mr. Falaye. (DLT's Memorandum in Opposition to Appeal, 1-2.) The Petitioner appears to concede that he received these notices, as the Complaint alleges he "has been disturbed by numerous mailings on the subject" and seeks an Order from this Court that further communication cease. (Complaint ¶¶ 6, A.) *Page 6 
It is well-established that the Rhode Island Supreme Court "will not consider constitutional issues when they have not been raised below in such a manner that the trial justice may have had an opportunity to address them." Randall v. Norberg, 121 R.I. 714, 721, 403 A.2d 240, 244
(1979) (citations omitted). In Randall, the Court "hasten[ed] to point out, however, that the failure to raise a constitutional issue at the administrative level does not preclude its litigation in Superior Court." Id. (citing § 42-35-15(g)(1)). The Supreme Court's citation to § 42-35-15(g)(1) is important; since that section allows review for "violations of constitutional or statutory provisions," it follows that a statutory provision not raised at the administrative level can nonetheless be raised in the Superior Court.
In this case, Petitioner claims that the DLT has acted in violation of a statutory provision — the Rhode Island Limited Liability Company Act — and his claims regarding ownership of the Laundromat go to a threshold jurisdictional issue. Although the Court is reticent to excuse the apparent disregard for legal process shown by Petitioner, there has been no waiver of the issue of the ownership structure of the Laundromat. Therefore, the Court finds that Petitioner is entitled to a hearing on his claim that, as a member of a limited liability company, he is protected from personal liability for the company's debts.
The Rhode Island Limited Liability Act
Petitioner argues that the DLT decision is in violation of the Rhode Island Limited Liability Company Act ("LLC Act"), G.L. 1956 § 7-16-1 et seq. That Act provides in pertinent part that "[a] member or manager of a limited liability company is not liable for the obligations of the limited liability company solely by reason of being a member or manager." G.L. § 7-16-23. The LLC Act, like laws regulating incorporation, *Page 7 
thus provide a "protective shield of limited liability" by treating the company as "`an artificial' creature of the law." Doe v. Gelineau,732 A.2d 43, 44-45 (R.I. 1999) (quoting Cook v. American Tubing WebbingCo., 28 R.I. 41, 49, 65 A. 641, 644 (1906)). Like the Corporation Act, however, the LLC Act requires that articles of organization be filed with, and accepted by, the Secretary of State before the protective shield will apply. G.L. § 7-16-5.
The protection provided to the members and managers of an LLC is not absolute. As this Court has previously recognized, principles of corporate "veil piercing" can apply to strip an LLC member of the protection. See Stanley Weiss Assocs., LLC v. Energy Mgmt., Inc., No. 02-1794, April 7, 2004, Silverstein, J. The Rhode Island Supreme Court has long recognized the basic elements of this doctrine:
 The criteria for piercing the corporate veil to impose liability on noncorporate defendants vary with the particular circumstances of each case. Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999). However, "when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity" we will not hesitate to disregard the corporate form and treat the defendant as an individual who is personally liable for the debts of the disregarded corporation. R B Electric Co. v. Amco Construction Co., 471 A.2d 1351, 1354 (R.I. 1984). Thus, in circumstances in which there is such a unity of interest and ownership between the corporation and its owner or parent corporation such that their separate identities and personalities no longer exist we have held that "adherence to the principle of their separate existence would, under the circumstances, result in injustice." Muirhead v. Fairlawn Enterprise, Inc., 72 R.I. 163, 172-73, 48 A.2d 414, 419, 49 A.2d 316
(1946). In those situations the corporate form is disregarded and liability is determined by justice and fairness.
Nat'l Hotel Assocs. v. O. Ahlborg Sons, Inc., 827 A.2d 646, 652 (R.I. 2003). The party asking the Court to disregard a corporate form and impose personal liability bears the burden of proof. Gelineau,732 A.2d at 49 (citing 1 Fletcher, Cyclopedia of the Law of PrivateCorporations § 41.28, 608-16 (rev. ed. 1999)). This burden is a heavy one, for *Page 8 
"the stakes are too high for courts regularly to disregard the separate legal status of corporations." Id., at 44. The determination depends on the totality of the circumstances, including factors such as stock ownership, capitalization, domination of business finances and policy, whether deception or personal promises are employed to induce an agreement, and whether the individual acted in a personal or corporate agent capacity. Nat'l Hotel Assocs., 827 A.2d at 652; Alterio v.Biltmore Constr. Corp., 119 R.I. 307, 316, 377 A.2d 237, 241 (1977).
In opposing Petitioner's appeal, the DLT argues that veil piercing is appropriate here, as limiting liability would promote an injustice against these claimants who have not been paid their earned wages. Counsel points out that none of the complaining employees apparently had any knowledge of Frontiers, LLC, as they were hired by and dealt with Petitioner as the owner. While these are relevant considerations, they are being raised for the first time before this Court. The Frontiers name was not mentioned at the DLT hearing, and the Department Representative did not mention it in his Decision. Counsel for DLT, in fact, points out that Petitioner's Complaint to this Court is the first instance in which the name appears. This lack of discussion in the Decision is understandable, as the DLT had only the testimony of the complainants, as well as their bank records indicating the Laundromat as payor. The fact remains, however, that the certified record in the case contains no discussion or findings with respect to the status of Frontiers, LLC.
As stated supra, whether the veil of an LLC may be pierced and its members or managers held individually liable for its debts depends on the circumstances of each case. Furthermore, the burden of showing the propriety of veil piercing rests on the party *Page 9 
seeking to impose individual liability — here the claimants before the DLT — and this burden must not be a light one. "Rather, respect for the legitimacy of the corporate form and its protective shield of limited liability usually dissuades courts from using their remedial swords to run them through — at least without extreme provocation to do so."Gelineau, 732 A.2d at 45.
In this case, the Court finds that factual determinations — based on a fully-developed record currently not present — remain to be made, and should be made in the first instance by the DLT. At this time, the record contains no evidence as to whether Frontiers was a validly formed LLC, with its certificate of organization accepted by the Secretary of State, and if the LLC did in fact own the Laundromat. If Frontiers, LLC was the valid owner of the Laundromat, the question of veil-piercing has not been addressed. Therefore, a vacation of this Decision and Order of the DLT, and a remand to the agency is necessary.
The Court notes that although the above-cited cases involved judicial determinations on the issue of corporate veil-piercing, the Rhode Island Supreme Court has sustained an agency's consideration and application of the doctrine. See United Transit Co. v. Nunes, 99 R.I. 501, 209 A.2d 215
(1965). The DLT, with its broad statutory enforcement powers to obtain employer records and witness attendance and testimony, is capable of investigating the relevant circumstances in this matter and determining the question of liability. See G.L. § 28-12-14. The Court further notes that, in the absence of such findings, the discussion here is intended to guide, and not to prejudge, the DLT's determination in this matter. *Page 10 
Finally, in relation to the power of the DLT to adjudicate this matter, the Court will address Petitioner's claim that he is not a proper party in this proceeding. Petitioner's assertion is incorrect, as the pertinent statutory provision defines an "employer" as "any . . . firm, partnership, association, joint stock company, trust, corporation, . . . and any agent or officer [thereof]." G.L. § 28-14-1(2) (emphasis added). Therefore, Frontiers, LLC — as the putative owner of the Laundromat — and Petitioner — who, the DLT has found, hired these claimants and held himself out as the owner and/or manager of the Laundromat — are both proper parties and should be joined in these proceedings. Petitioner, as an employer and as the party against whom individual liability is sought, can provide useful testimony and evidence. The DLT, furthermore, is able to compel Petitioner's attendance, as he is subject to the express subpoena power of the agency, enforceable by contempt proceedings upon application to this Court. G.L. §§ 28-14-15 to 28-14-16.
 Conclusion
The Court has found the record in this matter is not fully developed on the threshold question of ownership of the Cumberland Hill Laundromat and whether limited liability ownership is valid. In order to "correct deficiencies in the record and thus afford the litigants a meaningful review," this Court remands the matter to the Department of Labor and Training for a new hearing. The DLT is instructed to make findings of fact addressing Petitioner's claims that Frontiers, LLC was duly organized under Rhode Island law and the owner of the Laundromat. If it determines that Petitioner's claims are valid, the DLT must further consider if the circumstances in this case justify imposing *Page 11 
individual liability on Petitioner for the unpaid wages at issue. This Court will retain jurisdiction in the matter.
Counsel shall submit the appropriate order for entry.
[1] In his memorandum supporting this appeal, Petitioner claims to have appeared at a pre-hearing conference and stated there that he was not a proper party and that these employees were in fact independent contractors. There is nothing in the record noting such an appearance. The Court finds, however, that resolution of the appeal does not turn on this issue.
[2] Although not expressly stated in the Decision, the $479.50 accounts for an advance of $200 that Ms. Monroe testified to receiving on January 28th. (Transcript 27:4-7.) *Page 1